Allemania Fire Insurance Company, Plff. in Err., v. Pittsburgh Exposition Society.

---

St. Paul Fire & Marine Insurance Company v. Same.

---

Insurance Company of Pennsylvania, Plff. in Err., v. Same.

Under a policy of fire insurance which provided that the company should not be liable for loss "occurring while any of the following named articles

Cited in Coyle v. Ward, 36 App. Div. 181, 55 N. Y. Supp. 388, construing the word "premises" as limited to the buildings in which the insured property was situated; in Heffron v. Kittanning Ins. Co. 132 Pa. 584, 20 Atl.

(including fireworks and gunpowder) are kept, stored or used, in or on the premises herein described," the property insured being described in the policy as a certain building "situated on the south side of the society's (the assured's) premises," *held,* that fireworks placed in another building of the assured, upon the same piece of land, from 20 to 50 feet from the building insured, were not placed on the "premises" (*i. e.,* the insured premises), within the meaning of the policy, and were not within said provision.

A provision avoiding the policy "if the risk shall be increased by the erection or occupation of neighboring buildings, or by any means whatever within the control of the insured," construed as referring to a permanent use or occupation, by which the risk is materially increased, and not to the mere casual use of adjoining property.

A provision avoiding the policy if there is an "omission to make known every fact material to the risk, or an undervaluation, or any misrepresentation whatever," construed to refer to what existed when the policy was taken out and not to what might occur thereafter, or after a renewal.

In construing a contract of insurance, a doubt about the meaning of the policy, if any exists, is to be resolved by the court against the company, and in favor of the assured.

A submission to arbitration of the amount of loss under a fire policy, *held,* to be a waiver on the part of the company of a provision of the policy requiring notice of loss in writing, and a waiver of everything in relation to the amount and character of the loss, but not a waiver of a provision in the policy requiring the assured to set forth his knowledge of the origin of the fire and the title and interest of the parties.

Evidence of a waiver of proofs of loss *held* sufficient to warrant submitting the question to the jury.

(Argued October 24, 1887. Decided November 7, 1887.)

October Term, 1887, Nos. 21, 22, 23, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas No. 2 of Allegheny County to review judgments in favor of plaintiff in actions on the case on policies of fire insurance. Affirmed.

These three actions were brought by the Pittsburgh Exposition Society, against the Allemania Fire Insurance Company,

698, holding that in construing the contract of insurance, any doubt that may exist will be resolved in favor of the assured.

NOTE.—The insurance will be avoided by the keeping of articles upon the premises, forbidden by the policy. Hutton v. Patrons' Mut. F. Ins. Co. 191 Pa. 369, 43 Atl. 219. But not by a mere temporary placing of the specified articles therein. Heron v. Phœnix Mut. F. Ins. Co. 180 Pa. 257, 36 L. R. A. 517, 57 Am. St. Rep. 638, 36 Atl. 740.

the St. Paul Fire & Marine Insurance Company, and the Insurance Company of Pennsylvania, separately, upon policies of fire insurance for $1,000 each, issued by said companies respectively upon the same premises.

The case against the Allemania company was tried separately, and on the next day the cases against the St. Paul and Pennsylvania companies were tried together.

The material facts appear from the following charges of the court below, Ewing, J.:

*Charge in case against the Allemania Company.*

On the first day of August, 1881, the Allemania Insurance Company insured the Pittsburgh Exposition Society to the amount of $1,000 on a "one-story open frame shed used for stabling purposes, situated on the south side of the Society's premises and parallel with the line of the Pittsburgh & Western Railroad, first ward, Allegheny City," for one year. In the policy it is stated that $2,000 of other insurance had been obtained.

On the second of August, 1882, the policy was continued in force for another year by the payment of a premium of $20, and on the second of August, 1883, by a like payment the policy was continued for a third year. The stable, or frame shed used as a stable, was burned down on the 23d day of September, 1883. The plaintiff company brings suit to recover on this policy for the loss. The defendant denies that it is liable. The first defense set up is a technical one—that after the fire the company did not comply with the conditions of the policy requiring notice of the fire and formal proof of loss. That condition in the policy was for the protection of the insurance company, was one that it could waive, and unless it has waived it, it is entitled to take advantage of it. It could have been waived by words and acts which naturally and necessarily led the insured to understand that the company did not require the proofs and therefore caused it to neglect furnishing them. The plaintiff claims that condition of the policy was formally and unequivocally waived by acts which are admitted.

On the 14th of October, 1883, a short time after the fire, the plaintiff company and the three insurance companies that had insurance on this building together entered into a agreement of submission as to the amount of loss, in accordance with a condition in the policy that where they did not agree upon the amount

of actual loss, it should be referred to two appraisers, one selected by each, and, if they could not agree the appraisers to select a third. As I have said, they entered into a formal agreement, submitting the amount of loss on this shed to appraisers, and by the terms of the policy their award is conclusive on the insurance companies as well as the Exposition Society. They found the amount of the loss to be $2,480.

The plaintiff claims that the agreement to submit, with the award, is a waiver of all proofs of loss—of everything in that condition that would be rendered useless and entirely unnecessary by the determination of the amount of loss. It is a waiver clearly of the first condition of section F, namely: that immediately after the fire notice of the loss shall be given in writing. It is a waiver of everything in relation to the amount of the loss, whether it be a total loss or otherwise, and as to the character of it, whether the building was old or new, and as to giving any schedules or anything of that sort. The only thing of which I conceive that it is not a waiver is the provision that requires the insured to set forth such knowledge as he has, or has been able to obtain, as to the origin and circumstances of the fire and the title and interest of the parties. I have doubt as to whether or not this agreement was not a waiver of everything in that condition of the policy, but the burden of proof is on the plaintiff, and I solve that doubt in favor of the defendant; so that unless you find something more than a mere agreement to refer you will not find that the proofs of the loss were waived, and you will find for the defendant. If, after the award, the defendant company, by its agent or agents, duly authorized, refused to pay, not for want of a proof of loss but for some entirely other reason, thus leading the Exposition Society to suppose that no further proofs of loss were required and nothing but the question of direct liability remained, that would be a waiver.

Mr. Patterson says that he went to the office of the insurance company, saw Mr. Hammer, the agent, M. Herrosee, and he thinks Mr. Craig, and he states that they refused to pay. He had gone, he says, at the request of the board of directors of the Exposition Society, to see about it, and they refused to pay, giving other and entirely different reasons from any suggestion about the proofs of the loss. It is conceded by defendant's counsel that if that occurred, it is (in connection with the agreement to refer and award) a waiver of the formal proofs of loss. Mr.

Hammer denies that he ever saw Mr. Patterson there and talked to him about it, or talked to him about it at any place. He says he did meet him at another place some time after that. Mr. Herrosee on the other hand says he never heard such a conversation, but he did see Mr. Patterson at the office. My recollection is that he said he saw him with Mr. Hammer. Mr. Craig says he has no recollection of seeing Mr. Patterson there. It is a question of fact for you. If that occurred, as Mr. Patterson says, it is a waiver; and you come then to the questions that contain the more substantial defenses.

The insurance in the first place sets out an absolute insurance against loss by fire and lightning to this property, but the policy is subject to "the following terms and conditions," and the insured by the acceptance of the policy agreed to be bound thereby. I should, perhaps, before I go into this refer to the alleged facts; the plaintiff's case as to the fire was made out by the admission in the affidavit of defense. The affidavit of claim set out the loss by fire, the policy, and other numerous things, which the defendant admitted in its affidavit of defense setting up other matters of defense. The defendants called witnesses, among them Mr. Patterson, who was also a witness for the plaintiff, to prove that the loss occurred by reason of a fire in a stable on the same lot of ground belonging to the plaintiff, situate from 25 to 40 or 50 feet away from this building that was insured. As to the distance there is a difference of opinion among the witnesses. It is alleged, and several witnesses testify it is a fact, that on the day previous certain fireworks and some gunpowder were put in this other stable and an explosion occurred. Just how the fire happened no witness has detailed, but you can probably infer readily from the testimony. Mr. McFadden, the fire marshal, undertook to tell us, although he was at home at the time; and it may be, very likely is, true that his inferences are correct—but the inferences are for the jury to draw. The uncontradicted testimony, however, is that fireworks and some powder in connection with them was placed in this stable, being 25 to 50 away from the property insured and were there at the time the fire occurred.

Now the defendant claims that the policy is avoided by the provision of the fourth section of article "A" of the conditions, which makes the policy void if there is "an omission to make known every fact material to the risk, or an over valuation, or

any misrepresentation whatever." The defendant claims that it was a violation of the policy to put this gunpowder in that building. [I interpret this provision to refer not to what may occur after a policy is taken out, or after renewal, but to what existed at the time the policy was taken out. If it was to cover the entire life of the policy, it was easy to have so stated among these numerous conditions, that there would be no mistake about it. Now I recollect no testimony that at the time of the taking out of the policy, or at the time of the renewals, there was anything requiring special attention.]

The testimony of Mr. Patterson is that this stable in which the fire originated had been there to his recollection before the shed insured and that it had been used for the storing of fireworks only twice—once about a week before the loss occurred, and at this particular time. If that be so, the failure to report the storing of these articles at that time was not a violation of the terms of the policy.

[The seventh section of the same article states that the policy is avoided "by the failure or neglect of the insured to notify the company of any increase of hazard by change of use or occupancy, vacancy, or inoccupancy, or by the erection of neighboring buildings." There was no erection of neighboring buildings that we have any evidence of that affected the policy.]

The next, the one I have had the most difficulty on, and one in which I think there is more merit than any other of the defense, is this: By the fourth section of article "B" of the conditions it is provided that the company "shall not be liable for loss occurring while any of the following named articles are kept, stored, or used in or on the premises herein described, any custom or usage of trade to the contrary, notwithstanding" and among them "fireworks and gunpowder." Now if the fireworks had been stored in this particular shed I would have no hesitation in telling you, if you found that to be the fact, that the plaintiff could not recover. But it is not contended or pretended that they were stored in the particular building insured.

[The question is whether or not the words "on the premises herein described" is to apply to the building insured or to the entire lot of the plaintiff. The description in the policy of the building insured is wholly of the shed—"an open frame shed used for stabling purposes, situated on the south side of the society's premises and parallel with the line of the Pittsburgh

& Western Railroad Company." It is capable of being limited to the building insured or extended to the entire lot of ground, and being capable of the two interpretations, following the ruling of the supreme court of this state in a recent case, I hold, and instruct you, that the term "premises" does not cover a building detached, 25 to 50 feet away and not used in connection with this shed.] 7

I am not deciding what the ruling would be if the fireworks and gunpowder had been stored right alongside the building in the curtilage or yard; that might raise a different question.

Another defense is based on the second section of article "E" of the conditions. "This insurance, the risk not being changed, may be continued for such further time as shall be agreed on, and it shall be considered as continued under the original representation and for the original amounts, unless otherwise specified in writing; but in case there shall have been any change in the risk, either within itself or neighboring buildings within the knowledge of the insured, not made known to the company at the time of renewal, the policy and renewal shall be void."

It is contended by defendant's counsel that this refers to any change in the risk, either within itself or by neighboring buildings, at any time during the running of the policy. We cannot so interpret it, for the reason that the section itself says otherwise. It says that if any change is concealed at the time of renewal, it avoids the policy. As I said before, there is an absence of testimony to show that this building was so used, so far as I recollect it, at the time of the making of the policy, or of the last renewal, or either renewal.

If you find for the defendant you have nothing to say about amounts. If you find for the plaintiff, it could only recover the one third of the loss with interest sixty days after the date of the award. Counsel have agreed on the amount if it is entitled to recover at all.

*Charge in cases against the St. Paul and Pennsylvania Companies.*

After stating the issuance of the policies, their renewals and the fact of loss by fire, as in the preceding charge, the court continued:

The defendant defends on the ground that the plaintiff has not complied with the terms of the policy. There are numerous

conditions and provisions annexed to each of these policies of insurance which are made a part of the contract; first, the company defends, on the ground that is technical, namely: that after the fire and after an equitable liability attached, if there was any such, the plaintiff did not conform to the requirements of the policy in giving the necessary notice of fire and proofs of loss. The plaintiff admits that it did not give any formal proofs of loss, but asserts, which is not disputed (and it is not material, because it was waived, if it was not), that notice of the fire was given.

On the 14th day of October, 1883, the companies that had insurance in this property and the Exposition Society entered into a mutual agreement, which is in accordance with the terms of the policies, by which they referred the amount of loss to two appraisers. These appraisers fixed the amount of the entire loss at $2,480; and that appraisement is conclusive on both sides, as to the amount of loss. Neither side could be heard in court to contradict the finding of the appraisers, that the actual loss was $2,480. Now, as I have stated before, to maintain a suit on either of these policies it was necessary that the Exposition Society should have made proofs of loss, as required by the policies, or else the insurance companies must, by some act or declaration or series of acts and declarations, have waived the production of the proofs of loss. If the parties have made an agreement, and the insurance companies have done something that makes the furnishing of the proofs of loss useless, immaterial, absurd, or preposterous, it is necessarily a waiver of them. The provision being put in for the benefit of the insurance companies merely, and being only for their protection, they could waive it. In the case of the St. Paul company the eighth section of the conditions on the third page of the policy is that "in case of loss or damage by fire the insured is forthwith to give notice thereof to this company (that has been done) and as soon as possible thereafter deliver in under oath or affirmation, if required by the company, as particular an account of the loss or damages as the nature of the case will admit of, together with a statement of the other insurance, and to produce to the company satisfactory proof thereof."

This agreement to refer, with the award, has concluded all of that. "As particular a statement of the amount of loss or damage as the nature of the case will admit of" we have now con-

clusively determined by the award of the arbitrators. A state·
ment of the other insurance is contained in this agreement,
showing what it was; so that a production of the proof of·loss as
required by this policy of the Pennsylvania company would be
entirely useless, because all the information it required is al-
ready given and conclusively settled in the award of the arbi-
trators.

As to the St. Paul company;.there is a further provision that
we do not·think the information required by it is furnished by
this agreement to submit, and the award. The requirement to
render a particular account of the loss is waived by the agree-
ment (reading from the policy): "Stating whether any and
what other insurance has been made on the said property." I
think that is waived. "Giving copies of written portions of all
policies." I think that is also waived. "Also the actual cash
value of the property and their interest therein"—"for what
purpose and by whom the building insured, or containing the
property insured, and the several parts thereof were used at the
time of the loss"—"when and how the fire originated." We
have some doubts as to whether this agreement and the award
are not·to be treated as a waiver of all the requirements of the
proofs of loss; but we solve the benefit of that doubt in favor
of the insurance company because the burden is on the plaintiff
to get rid of the condition of the policy requiring proofs of loss.

Unless by its acts and declarations, or both combined, the in-
surance company has led the Exposition Society to believe that
the proofs were not required, the plaintiff cannot recover; it is
not entitled to maintain a suit against the St. Paul company un-
less it had good ground to believe that the company had dis-
pensed with, or did not wish, further proofs of loss. It will not
do that the plaintiff thought the insurance company did not
want any further proof of loss; it must have had a reasonable
ground in the acts and declarations of the insurance company, or
its agents, for believing it.

Now in this case the agreement to refer and the award are
important facts to be taken into consideration. It is conceded
by counsel for the defense, as he said in his argument to you,
and in his argument to the court, that if Mr. Dean undertook
to give instructions to the agent of the Exposition Society as
to what he should do, preparing notice of the fire for him, and
when subsequently asked about payment refused to pay simply

because the Allemania company would not pay, giving no intimation of any other ground, as testified to by Mr. Patterson, it is sufficient in connection with the agreement and award from which the jury may find a waiver, and we have so instructed you on the point submitted by plaintiff's counsel.

Mr. Dean denies, or at least says he has no recollection of, this having occurred; and it is a question of fact for you, the burden being on the plaintiff to show the facts which amount to a waiver of this preliminary proof of loss before it can maintain its action against the insurance company. [As to the Pennsylvania company we have told you that the agreement to refer and the award is a waiver of the proofs of loss.]    8    As to the St. Paul company other acts are required.

Then we come to what might be called the equitable grounds that the defendant sets up, the meritorious defense, to the payment of these policies. There are numerous conditions annexed to the policies that are made part of the contract, and the insurance companies made their insurance and took the risk subject to those conditions, and the Exposition Society took its indemnity subject to them. It is the business of the court and jury to apply the law and the evidence to their contract as they made it. In the St. Paul company's policy there are three or four provisions which defendant's counsel claim have been violated. One is: "If during this insurance the above-mentioned premises shall be used for, or to carry on, any unlawful traffic, business, or vocation therein, or for storing, using, or vending therein, any articles, goods, or merchandise not customary or usual in the use and occupation of the premises insured, or containing the property insured, contemplated in the description thereof in this policy, then and from thenceforth, so long as the same shall be so appropriated, applied, or used, this policy shall be of no force or effect." There is no evidence that there was anything stored in this building destroyed that is prohibited in the policy.

[Another provision in the succeeding clause is: "Or, if the insured shall use or keep gunpowder, fireworks, nitroglycerine" and so on, "without permission in this policy, then in every such case this policy shall be void." That we necessarily interpret to mean, if it is kept and used in the building the policy is avoided; otherwise, if you take it in its broad significance and say that it means any place outside of the building, we would have to say

that if he kept it in his house in another city it would avoid the policy.    We do not so apply it.]8

There is a provision in the first part of the section as follows: "If the above-mentioned premises shall at any time be occupied or used so as to increase the risk, or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever" and so on "without written permission, or without notice, the policy shall be void."    That we interpret to mean at any time during the running of the policy; and if that condition has been violated, the plaintiff cannot recover.

The provision in the policy of the Pennsylvania Insurance Company, "if the risk shall be increased by any means whatever within the control of the insured during the continuance of the insurance and notice thereof be not given to the company, and such increased risk be not indorsed thereon, this policy shall be of no force," is substantially the same, in general effect, so that as to this question we may consider the two policies together. "If the risk shall be increased by any means whatever within the control of the insured" is to have a reasonable interpretation; it does not mean every trifling act of the insured that may possibly make a fire more likely to occur than it would otherwise, and it does not mean when it says "within the control of the insured" every act which he might by some extreme measure prevent. It means something that makes a material, fairly evident increase of the risk—such an act, or such a storage or occupation of an adjoining building, for instance, within the control of the insured, that one who has an ordinary knowledge of the affairs of life and of the management and safety of property ought to know is an increase of the risk.    It must be something that may be treated as fairly a permanent use or occupation, not a mere casual act; for instance, driving a wagon within 30 or 40 feet of a building, having on a keg of gunpowder, might increase the risk, but that would be of a transient nature, and not such an act, nor such a use or occupation of an adjoining property, as is contemplated in these policies.

I have given you extreme cases, to illustrate the principle, and you must apply it to the facts in this case.    If the use or occupation is regular (whether continuous or not, it does not strike me as material)—if it is from time to time, or habitually for any considerable period of time, it is sufficiently permanent to require the insured party to give notice of the increase of risk.

Now the testimony of the defendant goes to show, and it claims has established, that a building on the premises of the company insured, which had been used for a considerable time as a stable, 25 to 50 feet away from the building specified in the policy, had been used at the time of the fire for placing and storing fireworks, and perhaps some gunpowder, for the purpose of an exhibition on the grounds, or property, of the Exposition Society. Such goods had been stored there, Mr. Patterson says, a week before and used. An exhibition of fireworks had been given on the 17th, and one was to be given on the 24th; and according to the testimony of the defendant's witnesses, on Saturday, the 22d, the fireworks were stored in this stable in the vicinity. Plaintiff's counsel claim that the evidence shows it was only frames on which the fireworks were to be attached that were stored. That is for you. The fire occurred on the 23d, on Sunday, at 9 o'clock in the evening. No one knows just how it did occur, whether the stable caught fire and an explosion came from the fireworks, or the fireworks exploded and the stable caught from them.

[But it is not material in this case whether or not the fireworks were the first thing to burn, provided the storage of them was a permanent one, as we explained to you, and it materially increased the risk of the insured building.]    9

It is in evidence that the stall, or a partition between two stalls in the stable, was taken out for the purpose of placing some of these fireworks there or arranging the frame—some evidence of an intention to make it permanent—and we have said to you, in answer to plaintiff's point, that "if with the knowledge and consent of the officers of the Exposition Society fireworks were habitually stored from time to time as they might be needed in the building of the society, 25 to 50 feet from the building insured, and were permitted to remain there for a day or two at a time, to suit the convenience of the society, or its agents," etc. The facts are for you as to whether that was the way in which they were placed, and then you will have to determine the fact as to whether or not the risk of this particular building was increased materially by the storage of the fireworks. In doing that, as I have told you, it is not an essential question in this case as to whether or not the fireworks were the first thing that caught. I may say that I do not consider the loss here, under the evidence, as occurring from the explosion in the sense in which it is used

in one of the clauses of this policy. That means a direct loss from explosion. A fact to be taken into consideration in relation to the increased risk is that in this very policy firecrackers and works are classed as especially hazardous. You will take the quality and quantity, and you will take the situation of the building into consideration, and the class of the building also, and determine whether or not the risk was materially increased. It will not do, as assumed by the learned counsel for plaintiff, to say that it was not increased because stables are put in these policies as hazardous."

Counsel for plaintiff: "Stables are marked as more hazardous than fireworks in that policy."

By the Court: "If that be the fact, that stables like this are classed as more hazardous than fireworks, it does not necessarily follow that the addition of fireworks does not make it still more hazardous—does not increase the risk. For instance, no doubt this stable was a more hazardous risk on account of the proximity of the trains of the Pittsburgh & Western Railroad to it, but it would have increased the risk probably if another railroad ran right on the other side of it. Still, with these suggestions, the question is for the jury to determine whether or not this use was a material increase of the risk and not of a mere casual, transient nature. And while you will follow the instructions of the court as to what is a permanent or transient occupation, the facts are for you and you will determine whether or not there was an increase of risk, on your own judgment, from the evidence, even though the court has not undertaken to conceal from you what opinion it has on the question. If you find for the defendant, you simply return a verdict for the defendant in each case; if you find for the plaintiff, counsel have agreed as to the amount, because there is no dispute, as I have stated, the amount of loss having been fixed conclusively by the appraisers if the plaintiff is entitled to recover."

The agreement for submission to appraisers, above referred to, specified the scope of the submission as follows: "Shall appraise and estimate at the true cash value the damage by fire to the property belonging to Pittsburgh Exposition Society, as specified below (the property insured), which appraisement and estimate by them or any two of them, in writing, as the amount of

such loss or damage, as per the accompanying schedule, shall be binding on both parties, so far as regards such appraisement: it being understood that this appointment is without reference to any other question or matters of difference within the terms and condition of the insurance, and is of binding effect only so far as regards the actual cash value of, or damage to, such property as may be found to have been saved in a damaged condition."

The jury rendered verdicts for the plaintiff and judgments having been entered thereon the defendants took these writs. The Allemania Insurance Company specified the following assignments of error:

1. The court erred in its answer to plaintiff's second point, which point and answer were:

"If the first point (that under all the evidence the verdict must be for the plaintiff—refused—) be refused, then the court is requested to charge the jury that if they find from the evidence that the fireworks were at the time of the fire in a separate building, stable, or shed, situate wholly detached from the building insured, and distant 30 to 50 feet, and in no way connected or used therewith, then said detached building or shed was not a part of the premises insured, within the meaning of the policies of insurance."

*Ans.* "The second point is affirmed."

Farmers' Mut. F. Ins. Co. v. Moyer, 97 Pa. 449; Teutonia F. Ins. Co. v. Mund, 102 Pa. 90; 40 Wis. 446.

2. The court erred in its answer to plaintiff's fourth point, which point and answer were:

"That the jury have a right under the evidence to find that defendant company waived a formal proof of loss, and the plaintiff's evidence, if believed, shows such waiver."

*Ans.* "The fourth point is affirmed. If the defendant company entered into the written contract in evidence, to refer to appraisers the amount of the loss by fire, and after the award of the appraisers refused to pay the amount for other reasons than the failure to supply a detailed statement of the loss, it was a waiver of the furnishing of the proofs of loss required by the policy."

3. The court erred in its answer to defendant's third point, which point and answer were as follows:

"In plaintiff's *narr.* it is alleged that plaintiff has complied with all the conditions and terms of the policy sued on, and made

due proof of said loss and damage as required by the terms of said policy of insurance, whereas the proof on part of plaintiff is that no such proof was furnished.   This is a fatal variance between the allegations and the proofs, and the verdict must be for the defendant."

*Ans.* "The third point is refused."

4. The court erred in its answer to defendant's seventh point, which point and answer were as follows:

"That if no demand was made for payment by the plaintiff, or if the hazard was increased by any act of the plaintiff without notice to the company, it cannot recover herein."

*Ans.* "This point is double and is refused."

5, 6, 7. The portions of the charge inclosed in brackets and designated by exponents.

The St. Paul and Pennsylvania Companies specified the following assignments of error:

1. The court below erred in its answer to plaintiff's second point, which point and answer were as follows:

"That if the jury find from the evidence that the agent of the defendant company, when applied to by the plaintiff's agent for instructions as to the proceedings to be taken by the assured after the fire to prove the loss, wrote a form of notice which said plaintiff's agent said would be sufficient; entered into an agreement to refer the amount of loss to appraisers, and then refused to pay because the Allemania Insurance Company would not pay, then final proof of loss was waived and dispensed with."

*Ans.* "The second point is affirmed as to the case of the St. Paul company; as to the Insurance Company of Pennsylvania, the action of the parties in making the agreement for appraisers and the award thereof was a waiver of formal proof of loss."

2. The court below erred in its charge and answer to plaintiff's third point, which point, charge, and answer are as follows:

"That the placing of fireworks in a separate stable, situate wholly detached from the building insured, and distant therefrom 30 to 50 feet, and in no way connected or used therewith, was not a placing, occupying, or using for that purpose the premises insured within the meaning of the policy."

*Ans.* "The third point is affirmed."

3. The court below erred in its charge and answer to plain-

tiff's fourth point, which charge, point, and answer are as follows:

"That the provision of the policy relative to the increase of risk refers to the permanent increase of risk and not to any temporary or transient increase."

*Ans.* "The fourth point is affirmed, subject to the instructions contained in the general charge, and to the further explanation, that if with the knowledge and consent of the officers of the Exposition Society fireworks were habitually stored from time to time as they might be needed, in a building of the society, 25 to 50 feet from the building insured, and were permitted to remain there for a day or two at a time, to suit the convenience of the society, or its agents, in the exhibition thereof, such storage and occupation of the neighboring building was not a mere casual or transient use, such as would excuse the insured from giving notice thereof to the insurers under these policies, 'if such storage materially increased the risk.' "

4. The court below erred in answering defendant's first point, which point and answer are as follows:

"By the terms of the contract the insured was required to give to the company immediate notice of a fire, in writing, and as soon after the fire as possible shall render a particular account and proof thereof, signed and sworn to, setting forth certain matters specified in paragraph — of the policy. This formal proof of loss is a prerequisite to the right of recovery, and there being no evidence in this case that such proof was furnished, or that there has been a waiver of the same, the verdict must be for the defendant."

*Ans.* "The first point is refused as to the Pennsylvania company; the admitted act of the company, with the conclusive award of the appraisers as to the amount of loss, is a waiver of formal proofs of loss. And as to the St. Paul company there is evidence from which the jury may or may not find that the production of formal proofs of loss was waived. Unless their production was waived the plaintiff cannot recover."

5. The court below erred in its charge and answer to defendant's fourth point, and refusing to charge, as thereby requested as to the Pennsylvania company, which point, answer, and charge are as follows:

"Mere submission to appraisers under an agreement with the insured solely to ascertain the amount of loss or damage sus-

tained under the policy, without regard to the questions of legal liability of the company, is not a waiver of the proofs of loss required to be given by the insured to the company under the terms of the policy, if such submission is unaccompanied by any act or declaration of the company indicative of its refusal to pay the loss."

*Ans.* "The fourth point is affirmed, as to the St. Paul company, and refused as to the other defendants, as explained in the general charge."

6. The court below erred in its answer to defendant's fifth point, which point and answer are as follows:

"If the hazard was increased by any act of the plaintiff without notice to the company plaintiff cannot recover herein."

*Ans.* "The fifth point is refused as put."

7. The court below erred in its charge and answer to defendant's sixth point, which point, answer, and charge are as follows:

"That by the terms of the policy any omission to make known every fact material to the risk avoided the policy. And if plaintiff increased the hazard by the use of gunpowder or fireworks in adjoining buildings during the term of the policy, without notice to defendant, the plaintiff cannot recover."

*Ans.* "The sixth point is refused as put. It is affirmed, subject to the explanation contained in the answer to plaintiff's fourth point and in the general charge."

8 and 9, the portions of the charge inclosed in brackets and indicated by exponents.

10. The court erred in sustaining the plaintiff's objection to the following question, put by defendant to G. W. Dean, the insurance agent who effected the risks in this case:

"Suppose you insured a building in which, at the time of the insurance, there is no gunpowder, nor fireworks, nor in any building adjoining the property that you insure, and suppose afterwards fireworks were stored in an adjoining building, would that be an increase of risk?"

(Objected to as incompetent and irrelevant. Objection sustained.)

*Josiah Cohen* and *A. Israel,* for Allemania Fire Insurance Company, plaintiff in error.—Attached to the court's answer to plaintiff's second point are three citations: Farmers' Mut.

F. Ins. Co. v. Moyer, 97 Pa. 449; Teutonia F. Ins. Co. v. Mund, 102 Pa. 90; 40 Wis. 446, indicating that upon the faith of those cases the court answered the point in the affirmative, and in fact in its charge it placed its construction solely upon a decision of this "supreme court in a recent case," meaning, of course, the second above-cited case, Teutonia F. Ins. Co. v. Mund, 102 Pa. 90. Neither that case nor either of the other two cases can support the construction given to the word "premises" under the testimony in this case, as applied to the said prohibitory clause of the policy.

As to the third assignment of error, where the court refused to affirm defendant's third point relating to the variance between the *allegata* and *probata* in the matter of the *narr.*, alleging final proofs having been given, and the evidence failing to show such, we say the court erred, as this was a partial loss only and not a total one. Pennsylvania F. Ins. Co. v. Dougherty, 13 W. N. C. 272.

Waiver of proof must be shown by positive evidence, and to justify the submission of the question of implied waiver to the jury, there must appear in evidence some act or declaration of an authorized representative of the insurer that has led the assured to believe and rely upon it, that full performance of the express condition precedent is not required, and he is therefore misled to his injury. Wood, Fire Ins. 497; Beatty v. Lycoming County Mut. Ins. Co. 66 Pa. 17; Angier v. Eaton Cole & B. Co. 11 W. N. C. 146.

*Josiah Cohen* and *A. Israel,* for St. Paul Fire & Marine Insurance Company and Insurance Company of Pennsylvania, plaintiffs in error.—In Diehl v. Adams County Mut. Ins. Co. 58 Pa. 451, 98 Am. Dec. 302, a policy on a tannery without steam was accepted under the terms specified in the company's by-laws, which contained the classes and rates of risks. One of the classes was tanneries without steam. Steam power was attached to the tannery, and it was afterwards burned. Evidence that this did not increase the risk was held inadmissible. "The list was a mode of fixing what should be regarded as an increase of hazard." So it was in this case; and the court, therefore, erred in submitting to the jury the question of the increase of risk by the use of gunpowder.

The list, making it by its own terms specially hazardous, de-

termines by virtue of the contract of the parties what should constitute an increased risk, and to leave the question an open one to the jury was error. Lee v. Howard F. Ins. Co. 3 Gray, 583; Harris v. Columbiana Mut. Ins. Co. 4 Ohio St. 285; Washington Mut. Ins. Co. v. Merchants' & Mfrs. Mut. Ins. Co. 5 Ohio St. 450.

In Hill v. Pennsylvania Mut. F. Ins. Co. 15 W. N. C. 43, this court held there could be no recovery against the company by reason of a judgment being entered of record against the assured, the policy providing that if premises shall be encumbered by mortgage or judgment and no notice given the company the insurance should be void and of no effect. And it was held to be no excuse that the assured had no knowledge of the entry of such judgment or that no execution could have been issued thereon, as the bond was simply an indemnity bond and had never been violated.

The parties to the case were *sui juris;* no fraud is alleged, nor is the condition unreasonable. White v. Western Assur. Co. 3 Sad. Rep. 267.

In Birmingham F. Ins. Co. v. Kroegher, 83 Pa. 64, 24 Am. Rep. 147, the policy, as in these cases, prohibited petroleum and gunpowder being kept on the premises, under penalty of making it void. The court therein says: "If it were only an inquiry as to the increase of risk, it might well be referred to the jury"— but it is nothing of the kind, it is an express stipulation that petroleum shall not be kept upon the premises; and if it be so kept the policy is void.

*C. C. Dickey* and *Wm. M. Watson,* for defendant in error.— The universal interpretation of the word "premises" means the premises insured, and not the outlying curtilage.

Among the cases establishing this are: Moadinger v. Mechanics' F. Ins. Co. 2 Hall, 490; Northwestern Mut. L. Ins. Co. v. Germania F. Ins. Co. 40 Wis. 446; Robinson v. Mercer County Mut. F. Ins. Co. 27 N. J. L. 135; May, Ins. par. 228; Teutonia F. Ins. Co. v. Mund, 102 Pa. 89, 912 *et seq.;* and Wood, Ins. par. 56.

If there is any possible doubt as to what the word *premises* means, then that doubt is to be solved in our favor and against the parties who drew up the policies, according to the well-established principle in favor of the assured, affirmed in: Franklin F. Ins. Co. v. Updegraff, 43 Pa. 358; Smith v. Me-

chanics' & T. F. Ins. Co. 32 N. Y. 399; Western Ins. Co. v.
Cropper, 32 Pa. 351, 75 Am. Dec. 561; Commonwealth Ins.
Co. v. Berger, 42 Pa. 292, 82 Am. Dec. 504; Manufacturers' &
M. Ins. Co. v. O'Maley, 82 Pa. 400, 22 Am. Rep. 769; Teutonia
F. Ins. Co. v. Mund, 102 Pa. 89; and Burkhard v. Travelers'
Ins. Co. 102 Pa. 262, 48 Am. Rep. 205.

Finally, as to waiver of the technical proofs of loss, etc.:

As to the St. Paul company, the positive refusal of its agent
to pay unless the Allemania company would pay, and the fact
that the Allemania company did not pay, were quite sufficient
under the law to establish a waiver as to all proofs of loss.   This
principle is shown in: Pennsylvania F. Ins. Co. v. Dougherty,
102 Pa. 568; Franklin F. Ins. Co. v. Updegraff, 43 Pa. 358;
Cedar Rapids Ins. Co. v. Shrimp, 16 Ill. App. 248; Lebanon
Mut. Ins. Co. v. Erb, 17 W. N. C. 273; Farmers' & M. Mut.
Ins. Co. v. Meckes (Pa.) 12 Rep. 314.

Then, as to the Insurance Company of Pennsylvania, submis-
sion to appraisement has ever been held sufficient to establish a
waiver of technical proofs of loss, as appears from an examina-
tion of the following cases: Clark v. New England Mut. F.
Ins. Co. 6 Cush. 342, 53 Am. Dec. 44; Susquehanna Mut. F.
Ins. Co. v. Staats, 102 Pa. 529; and the other cases *supra*.

PER CURIAM:

We have examined these cases carefully and are unable to
find any substantial error.

The principal question, which is common to all of them, is
whether the fireworks were placed upon the insured premises
within the meaning of the policy.   The undisputed evidence
is that they were placed in a frame stable from twenty to fifty
feet from the building covered by the policy.   They were not,
therefore, upon the insured premises, and not within the prohi-
bition of the policy.   As a contract of insurance is one of in-
demnity, and the language of the policy is the language of the
company, we are not to strain it in favor of the latter as against
the assured.   On the contrary, we must resolve a doubt about
the meaning of the policy, if any exists, against the company
and in favor of the assured.

We think there was sufficient evidence of a waiver of proofs
of loss to justify the learned judge in submitting this question
to the jury.

The charge of the court was clear and impartial; and neither in this, nor in the answers to points, do we find anything of which the plaintiffs in error have any just cause of complaint.

The judgment in each case is affirmed.