# Bone, to use, v. Detroit National Fire Insurance Company.

*Insurance—Fire insurance—Conditions—Alleged breach—Location of gasoline tank and automobiles—Words and phrases—"Premises"—Restriction against change of possession—Levy by sheriff before fire—Case for jury—Evidence—Offers for property—Rebuttal as to market value.*

1. Where the terms of an insurance policy are capable of two meanings, or the true meaning is left in doubt, the law favors such construction as will protect the assured and does not lend a willing ear to an interpretation that will avoid the policy.

2. The term "premises" in a policy insuring against fire a "building occupied as a hotel," does not include the farm land upon which the hotel is situate, so as to make restrictive provisions of the policy applicable thereto.

3. In an action on a fire insurance policy upon a building "occupied as a hotel," and its contents, it appeared that a rider attached to the policy headed "dwelling and barn form," provided "not to exceed fifty gallons of gasoline......shall be kept on the premises ......to be contained in an air-tight metal tank, stored underground....... All gasoline shall be conveyed to building by a return drain pump." The rider also provided that not more than one auto should be kept on the premises. Defendant contended that such provisions were violated by keeping more than 100 gallons of gasoline in a tank, above ground, located 200 feet from the insured building and by keeping two automobiles in the barn 400 feet from the insured building. *Held,* (1) the risk assumed was the hotel and the word "premises" referred to the hotel building and not the land, and (2) the provision relating to the gasoline and automobiles was intended to refer to the barn, in case one was insured, and the rider being general and no barn being insured, such clause was inoperative, and (3) the court correctly charged that the presence of the tank and automobiles did not constitute a breach of the policy.

4. In such case where the policy provided that "the entire policy ......shall be void......if any change, other than by the death of the insured, take place in the interest (except change of occupancy without increase of hazard), title, or possession......whether by legal process or judgment or by voluntary act of the insured, or otherwise," and it appeared that plaintiff, who was the owner of the property had rented it to his son, and the latter's business partner

was in possession at the time of the fire, and several executions on judgments against plaintiff were levied on the property by the sheriff a few hours before the fire, but lessee's partner remained in possession, the jury's finding that there had been no change of possession was warranted by the evidence and will be sustained.

5. A fieri facias ·is not such a writ as, ex necessitate, would immediately oust the tenants from their possession or right of possession.

6. In such case where plaintiff gave evidence as to offers he had for the insured property, the effect thereof was to prove market value, and defendant was therefore properly permitted to adduce evidence of the market value of the property.

,Argued May 8, 1918. Appeals, Nos. 81 and 82, Jan. T., 1918, by plaintiff and defendant, from judgment of C. P. Crawford Co., Sept. T., 1916, No. 96, on verdict for plaintiff in case of Max Bone and Max Bone, Use of D. E. Kelley, Trustee, v. Detroit National Fire Insurance Company of Detroit, Michigan. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on a fire insurance policy. Before PRATHER, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $1,697.25 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were the charge of the court, various rulings on evidence and in refusing defendant's motion for judgment non obstante veredicto.

*Frank J. Thomas,* for Detroit National Fire Insurance Company.—The presence of the gasoline tank constituted a breach of the condition of the policy: Lancaster Fire Insurance Co. v. Lenheim & Co., 89 Pa. 497; Birmingham Fire Insurance Co. v. Kroegher, 83 Pa. 64; Hutton v. Patrons Mut. Fire Insurance Co. of So. Penna., 191 Pa. 369.

The levy of the sheriff operated as a change of posses-

sion in breach of the policy: Insurance Co. v. O'Maley, 82 Pa. 400; Bronson v. New York Fire Insurance Co., 19 L. R. A. 643; Carey v. German American Insurance Co., 84 Wis. 80; Gottsman v. The Pennsylvania Insurance Co., 56 Pa. 210; Thomas v. Western Insurance Co. of Pittsburgh, 5 Pa. Superior Ct. 383; Schiavoni v. Dubuque Fire and Marine Insurance Co., 48 Pa. Superior Ct. 252.

*Albert L. Thomas,* for Max Bone.—If the language in any part of an insurance policy is susceptible of two constructions, that one should be adopted which will indemnify the assured: Teutonia Fire Ins. Co. v. Mund, 102 Pa. 89; Weisberger v. Western Reserve Insurance Co. of Ohio, 250 Pa. 155; Bingell v. Royal Insurance Co., 240 Pa. 412; Graybill v. Penn Township Mutual Fire Insurance Association of Lancaster Co., 170 Pa. 75.

The word "premises," as used in the policy meant simply the hotel: McKeesport Machine Co. v. The Ben Franklin Insurance Co., 173 Pa. 53; Central Market Street Co. v. North British, Etc., Insurance Co. of London and Edinburgh, 245 Pa. 272; The Northwestern Mutual Life Ins. Co. v. The German Fire Ins. Co., 40 Wis. 446; Carlan v. Western Assurance Company of Toronto, Canada, 57 Md. 515; Sperry v. Insurance Company of North America, 22 Fed. Repr. 516; Marcello v. Concordia Fire Ins. Co., 234 Pa. 31; Farmers' Mutual Insurance Co. of Lancaster v. Graybill, 74 Pa. 17; Weiss v. American Fire Ins. Co., 148 Pa. 349; Stainer v. Royal Insurance Co. of Liverpool, 13 Pa. Superior Ct. 25.

OPINION BY MR. JUSTICE MOSCHZISKER, June 3, 1918:
The present suit was instituted upon two policies of insurance issued by defendant company, in certain proportions, upon "the four-story, frame, slate-roofed building occupied as a hotel, on Main street,......Cambridge Springs, Pa.," and the "goods" contained therein. Plaintiff, owner of the property in question, rented it to

his son, Joe Bone; the latter had as a business partner, in the possession and management of the hotel, one J. M. Manheimer. This hotel was located upon a forty-acre tract of land; and, 400 feet distant from the site of the insured building, there was a barn, where Bone & Manheimer kept two automobiles, employed in the conduct of their business; a gasoline tank, with a capacity of 400 gallons, was located about midway between the barn and hotel; gasoline therefrom was used to supply these automobiles, and, from time to time, small quantities were taken to the hotel building; but neither the location of the tank nor this use of its contents was in any way connected with the fire which caused the loss. Several judgments were entered against plaintiff, and, August 9, 1915, executions were placed in the hands of the sheriff, who, August 10, 1915, levied upon the insured premises and personal property; within a few hours thereafter, a fire was discovered in the linen closet on the third floor of the hotel, which resulted in the destruction of the building and part of its furnishings.

Plaintiff recovered a verdict, upon which judgment was entered; both sides have appealed. Defendant's paper-book shows but three "questions involved"; all of these relate to alleged breaches of warranties, any one of which, appellant claims, is sufficient to avoid the contracts in suit.

The premises insured are described in the policies as hereinbefore stated. In an attached printed rider, marked "dwelling and barn form," the following clause, among others, appears: "Not to exceed fifty gallons of gasoline......shall be kept on the premises,......to be contained in an air-tight metal tank, stored underground and located at least five feet from any building herein insured. All gasoline shall be conveyed to building by means of a return draining pump." Defendant contends the provision just quoted was violated by "keeping more than 100 gallons of gasoline in a tank,

above ground, located 200 feet from the insured build-
ing."

The above-mentioned rider also contains a stipulation
that "not more than one automobile using gasoline shall
be stored or kept on the premises"; and defendant con-
tends this was violated by keeping two such automobiles
in the barn, 400 feet from the insured building.

In disposing of the points to which we have just called
attention, the learned court below correctly states:
"Where the terms of a policy are capable of two mean-
ings, or the true meaning is left in doubt, the law favors
such construction......as will protect the insured,
......and does not lend a willing ear to an interpreta-
tion that will avoid the policy....... Cases might be
multiplied in favor of the construction that [the term]
'premises,' as used in the policy, does not include the
land included in the farm upon which the hotel stood.
......To adopt the contention of......defendant that
the automobiles and gasoline tank......were on the
'[insured] premises,' would be to hold that any point on
the forty-acre farm operated with the hotel would be on
the 'premises,' within the meaning of the policy.......
If the insurance company intended the 'premises' to in-
clude a distance of 200 to 400 feet from the hotel, it could
very easily have said so, and very likely would have done
so.......The fact that the stipulations concerning the
tank and automobiles appear in the rider, which is a
printed form intended for 'dwelling and barn,' and so
specifies, accounts in our judgment for the stipulation
as to automobiles; naturally, an automobile would be
stored or kept in or about a barn, and not......in or
about an hotel."

We concur with the construction put upon the policies
by the court below, and agree with what is said in plain-
tiff's paper-book, viz: "The risk assumed was the hotel;
that is the only thing described, and, when this word
'premises' is used in the policy, it refers to the hotel
building, not the land.  No gasoline was kept in the

hotel building, and it is clear that the demands of the hotel for gasoline were not such as to require a storage tank underground and that the gasoline be 'conveyed to the building by means of a return draining pump.' This [provision] referred to, and was intended to refer to, the barn, in case one was insured; the rider is general, and, no barn being insured......, that clause is inoperative" in the present instance: Grandin v. Rochester German Ins. Co., 107 Pa. 26, 37.

While, owing to differences in the facts involved, no authority is called to our attention which precisely rules the case at bar, yet the following may be cited as consistent with, and to some degree supporting, the conclusions reached on the points which we have been discussing: Allemania Fire Ins. Co. v. Pittsburgh Exposition Society, 8 Sadler 424, 443; Teutonia Fire Ins. Co. v. Mund, 102 Pa. 89, 93-4; Central Market Street Co. v. North British & M. Ins. Co., 245 Pa. 272, 276; Fireman's Fund Ins. Co. v. Shearman, 50 S. W. Repr. 598, 599; Carlin v. Western Assurance Co., 57 Md. 515, 529; N. W. Mutual Life Ins. Co. v. Germania Fire Ins. Co., 40 Wis. 446, 452; Sperry v. Ins. Co. of N. A., 22 Fed. 516, 517.

The last question involved in defendant's appeal relates to the condition that "this entire policy......shall be void...... if any change, other than by the death of the insured, take place in the interest (except change of occupancy without increase of hazard), title, or possession of the subject of insurance,......whether by legal process or judgment or by voluntary act of the insured, or otherwise." Defendant contends that the levy by the sheriff upon the insured "premises" and "goods," in connection with what was done by the officer at the time, constitutes such a change of possession as avoids the policies.

In overruling this contention, the court below says: "As to change of possession, when the facts are in dispute it is......a question for the jury. It is undis-

puted that Manheimer was a tenant under Max Bone [plaintiff]; his possession was the possession of the owner. The jury specially found that Manheimer remained in possession of the hotel after the sheriff's levy and until the time of the fire, as tenant. We think this finding is sustained by the evidence and settled adversely to defendant company its contention that the sheriff's conduct amounted to a dispossession of plaintiff's tenants; but, if the finding of the jury on this point were lacking the support of sufficient evidence, we are not prepared to assent to defendant's contention that the sheriff's levy......would effectuate such a change of possession as to avoid the policy."

We agree with both positions taken by the court below. The fact found by the jury, that at least one of plaintiff's tenants continued in possession of the insured property after the sheriff came upon the premises, subject, of course, to the latter's levy, prevents the application of the provision of the contract, as to change of possession, sought to be enforced by defendant. Then, again, a fieri facias is not such a writ as, ex necessitate, would immediately oust the tenants from their possession or right of possession. See the following relevant, if not ruling, authorities: Commonwealth Ins. Co. v. Berger, 42 Pa. 285, 292; Collins v. London Assurance Corporation, 165 Pa. 298, 306; Marcello v. Concordia Fire Ins. Co., 234 Pa. 31, 34 et seq.; Stainer v. Royal Ins. Co., 13 Pa. Superior Ct. 25, 41.

Plaintiff is dissatisfied with the amount of the verdict, and, for that reason, has also appealed, alleging the trial judge erred when he admitted certain evidence as to the market value of the insured real estate. In disposing of this complaint, the court below states: "Our reply......does not depend upon any refined reasoning as to whether, under the terms of the policy, the market value of the property insured has any relation to the amount of the insurance company's liability; it would rather depend on whether the plaintiff had not

made...... [such value relevant] by introducing it into
the case. Suppose plaintiff had relied entirely upon
proof of market value, and offered no evidence as to cost
of reproducing the hotel, it certainly would not be con-
tended that defendant could not accept the issue of
value......relied upon.......Plaintiff having relied
upon two measures of value as fixing defendant's liabil-
ity, defendant could meet the case presented only by of-
fering like evidence; hence, in our opinion, defendant
was entitled to prove market value: see Morris v. Travis,
7 S. & R. 220 [223].......The evidence tendered by
plaintiff was as to offers he had had for the insured prop-
erty......, but the effect was to prove market value.
We are also of opinion, the bona fides of such offers
being a proper inquiry for the jury, that defendant's evi-
dence as to......value would assist the jury in deter-
mining whether to believe such offers [to buy actually]
had been made, and; if so, whether they were in good
faith." See Hamilton v. Hastings, 172 Pa. 308, 317;
and opinion by RICE, P. J., in Winters v. Schmitz, 36
Pa. Superior Ct. 496, 505. We may add, there is no
specification of error attacking the manner in which the
measure of damages was submitted to the jury, the sole
complaint being as to the admission of testimony.

Under the circumstances attending the trial of this
case, we see no reversible error in the rulings called to
our attention by plaintiff's assignment; and, since we
have stated already a like view regarding defendant's as-
signments, they are all overruled.

The judgment is affirmed.