(128 App. Div. 24.)

## HOLMES v. DELAWARE & HUDSON CO.

(Supreme Court, Appellate Division, Third Department. September 17, 1908.)

1. EXPLOSIVES—NEGLIGENT USE.

Railroad Law (Laws 1890, p. 1101, c. 565) § 53, provides that none but those connected with or employed upon a railroad shall walk upon its tracks. Plaintiff, while walking along defendant's tracks, picked up a dynamite torpedo, and in an attempt to open it caused it to explode and injure him. The torpedoes were used by defendant as train signals, and were properly constructed. Defendant's tracks were used as a path by travelers with its acquiescence, but it did not appear that defendant had otherwise invited plaintiff to use its tracks. *Held*, that plaintiff was on the track by sufferance only, and defendant did not owe him the duty of active vigilance to prevent his injury, or to warn him against the wrongful destruction of the property, and hence was not liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Explosives, § 7.]

2. NEGLIGENCE—ACTS CONSTITUTING NEGLIGENCE—LICENSEES—CARE REQUIRED.

A license to enter on land creates no legal right and imposes no duty upon the owner, except the general duty which every one owes to others to do them no intentional harm.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 42.]

3. EXPLOSIVES—NEGLIGENT USE—INJURIES—PROXIMATE CAUSE.

Where plaintiff, while walking along defendant's track, picked up a torpedo used by defendant as a train signal, and struck it to open it, causing it to explode and injure him, even if defendant was negligent in permitting the torpedo to be on the track, plaintiff's negligence in striking the torpedo was the proximate cause of his injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Explosives, § 7.]

Appeal from Trial Term, Washington County.

Action by Christopher A. Holmes, by George H. Holmes, his guardian ad litem, against the Delaware & Hudson Company. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

The action was commenced to recover damages for personal injuries sustained by the explosion of a torpedo found upon the tracks of the defendant's railroad. The complaint alleges that for a great many years prior to the accident the defendant's railroad, between Dunham's Basin and Smith's Basin, had been used as a walk or path, with the acquiescence of the defendant; that the defendant had for some time used, for signaling the engineers of trains, torpedoes or dynamite cartridges so made that they could be fastened to the rail and exploded when the wheels of an engine passed over them; that the plaintiff found a torpedo as he was walking along the track; that he was curious to know what it was, and in making an examination it exploded and blew out one of his eyes. The only negligence alleged against the defendant was that it permitted the torpedo to be on its railroad tracks without warning as to its nature, knowing that the tracks were used by pedestrians.

The proof showed that on the 16th day of September, 1906, the plaintiff, a boy of 16 years of age, and his brother, who was 20 years old, were walking

upon the tracks of the defendant's railroad about a mile north of Dunham's Basin, when the brother saw a torpedo on the inside of the track between the ties. He testified that the plaintiff was a little ahead of him; that "I picked it up and fussed with it a little while before I said anything, and tore the two clasps off of it. Then I went over in the middle of the track, where he was walking, and asked him what it was—if he had ever seen one of them before. He said: 'No. * * * What's on the inside of it. So he got down on the track, or went down into the ditch first for a stone to break it open. Then he took it up on the track again, and got down over the track, and commenced to pound on the tin. I was about 20 paces ahead, walking along, when the thing exploded." The plaintiff testified that he did not see his brother pick up the torpedo, and saw none until his brother handed it to him; that he tried to open it, threw it down on the ground, "took it up edgeways and hit it once, but it did not seem to open it, so I laid it down flat and hit it a couple of times, and that exploded it."

The jury rendered a verdict for the plaintiff, and the defendant appealed to this court.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Lewis E. Carr, for appellant.
Erskine C. Rogers, for respondent.

SEWELL, J. I am of the opinion that the evidence did not show that the defendant was guilty of a violation of duty, and that no question was made for the jury in that respect. The claim of the plaintiff rests upon the assumption that the defendant invited, enticed, or allured him to come upon the railroad tracks. The claim is not tenable. The plaintiff was not invited upon the railroad tracks in any sense further than that the defendant had not taken occasion to prevent the public from using them as a footpath. It had procured the torpedo for its own use upon its own property. It was necessary for properly conducting its own business. It was not improperly or negligently made. It was fit for the purpose intended, and for all that appears it was necessary to have it where it was found. There is nothing in the record which justified the assumption that the defendant enticed, allured, or invited the plaintiff to come upon its land. Indeed, one of the statutes of the state provided that:

"No person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same." Railroad Law (Laws 1890, p. 1101, c. 565) § 53.

Under such circumstances, the plaintiff was there by sufferance only, and the company did not owe him the duty of active vigilance to see that he was not injured while upon its land for his own convenience. A license creates no legal right and imposes no duty upon the owner, except the general duty which every man owes to another to do him no intentional wrong or injury. Nicholson v. Erie Railway Co., 41 N. Y. 525; Larmore v. Crown Point Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718; Cusick v. Adams, 115 N. Y. 55, 21 N. E. 673, 12 Am. St. Rep. 772.

The same principle was asserted in Walsh v. F. R. R. Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615,

where, as in this case, the negligence, if any, was passive and not active, of omission and not of commission. There a child five years and nine months old went upon a plot of ground on which there was a turntable, and in company with other boys was turning it around, when his leg was caught and injured. It was held that the defendant owed him a duty not to injure him intentionally, but owed him no duty of active vigilance. The court said:

"The table might have been kept so fastened or locked when not in use that people could not turn it without unfastening or unlocking it, and the defendant might even have built a wall around it so high and guarded it so closely as to prevent any access to it by children at any time. But was the defendant bound to do so? Did it owe any such duty to the public or to the plaintiff? * * * We do not assert that the defendant owed no duty to the plaintiff under the circumstances existing, but we think it did not owe the duty of such active vigilance as would be necessary to exist in order to send the case to the jury and permit it to find the defendant guilty of negligence in this case."

In considering this branch of the case, it may also be observed that the defendant was not required to employ men to keep travelers off the track, or to warn them of the result of a wrongful destruction of property procured by it for the sole purpose of properly conducting its own business on its own land. If such a doctrine is sustained, I can see no limit to what may be required of a railroad company to relieve it from a charge of negligence. Assuming that the defendant was negligent, it cannot be said that it caused the injury. The negligence of the plaintiff in striking the torpedo with a stone, and the negligence of his brother in giving it to him, were intervening and responsible causes of the accident. The immediate cause of the plaintiff's injury was the act of the plaintiff. That was the natural and efficient cause. It also proceeded from the act of the brother, which was also an intervening cause, without which the accident would not have happened. The mere presence of the torpedo upon the track, without the intervention of these independent causes, would not have produced the accident. It was harmless on the track. It was harmless in the hands of the brother, and was harmless in the hands of the plaintiff until he caused the explosion by deliberate and intentional violence.

In my opinion, the negligence of the defendant, if any there was, was a remote cause, and not the natural or proximate cause, of the injury. I am also of the opinion that the negligence of the plaintiff caused the accident. He not only failed to exercise the least care or precaution in attempting to open the torpedo, but he consciously and intentionally resorted to extreme violence for the obvious purpose of destroying it. In other words, the explosion was the direct result of a deliberate and wrongful destruction of the defendant's property by the plaintiff. For this reason it seems quite clear that the plaintiff was not entitled to recover.

It necessarily follows that the judgment and order must be reversed, and a new trial granted, with costs to abide the event. All concur; SMITH, P. J., and KELLOGG and COCHRANE, JJ., in result.