ALFRED WILLIAM BABCOCK, an Infant, by His Guardian ad Litem, JENNIE BABCOCK, Respondent, v. SIMON E. FITZPATRICK and Another, Doing Business under the Assumed Name of J. J. FITZPATRICK & SON, Appellants.

Third Department, November 17, 1927.

Nuisances — liability — attractive nuisance — dynamite caps were stored without authority under porch of house belonging to third person — one boy found box containing caps, carried it considerable distance and gave one cap to infant plaintiff — plaintiff put string into cap, set fire to string and cap exploded in plaintiff's hand — if storage of caps was attractive nuisance, that was not proximate cause of accident — plaintiff cannot recover.

Plaintiff is not entitled to recover for injuries suffered when a dynamite cap belonging to the defendants exploded in his hand. It appears that the dynamite

caps, which wore in a box, were stored under the porch of a house belonging to a third person; that another boy discovered the box and carried it for a considerable distance from the place of storage and there distributed some of the caps among several boys; that the infant plaintiff was well aware of the nature of the cap and the method of exploding it, and placed a string within the cap and set fire to the string, but before he could throw the cap away it exploded in his hand.

If the storage of the caps at the place in question constituted an attractive nuisance, that was not the proximate cause of plaintiff's injury, for it was not the mere handling of the caps at or near the place of the storage that caused the injury, but it was the independent use of the fuse and a fire which caused the damage. This was an agency that could not reasonably be apprehended that boys would use unless they were familiar with the precise method of using the caps.

An intervening cause existed in the fact that the caps were taken by the first boy, who knew he had no right to take them, and were transported by him to a remote spot for the purpose of having the other boys explode them.

APPEAL by the defendants, Simon E. Fitzpatrick and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 2d day of September, 1926, upon the verdict of a jury for $20,000, subsequently reduced by the court to $10,000.

*Reilly & Yaras* [*Hugh Reilly* of counsel], for the appellants.

*Leary & Fullerton* [*James A. Leary* and *Edward W. Barrett* of counsel], for the respondent.

HINMAN, J. The action was brought to recover damages for personal injuries sustained by the infant plaintiff as the result of an alleged attractive nuisance maintained by the defendants. On or about December 7, 1924, and for sometime previously, defendants were engaged as contractors in the laying of a new water pipe line for the water supply of the village of Whitehall, N. Y. In excavating for a trench in which to lay such pipe line through a swamp and across a road in the outskirts of the village, it became necessary for the defendants to use dynamite on several occasions. Near the place where the blasting was done in laying the trench across the road in the outskirts of said village there lived a man by the name of Henry Gordon and there were a few other scattered houses in that vicinity, including the house of his brother, William Gordon, which was fifty to seventy-five feet away from the house of Henry Gordon. Henry Gordon's house fronted on said road which was about eighteen feet wide and the porch of his house running along the front thereof was five to ten feet from the edge of the road which was a public road or street. Between the edge of the road and the porch was a grass plot. The space underneath the porch was not inclosed but was open to view so that persons passing along

the road could see the ground underneath it. While the defendants' workmen were digging the trench across said road in that vicinity, the defendants' employees stored underneath said porch some tools including a large cast-iron water valve weighing about 700 pounds which was used to check the pressure of water in a pipe line. It was irregular in shape and only a portion of it rested upon the ground underneath this porch. Another portion of it overhung the ground leaving a space between. This valve was placed on the ground some distance back from the edge of the porch. During the progress of the work the defendants seem to have made careful provision for the storing of dynamite and percussion caps, with which the dynamite was exploded, but on one occasion at least when it became necessary to blast in the vicinity of this highway crossing, a box containing some of these percussion caps was temporarily placed on the ground underneath this water valve. There is a conflict in the testimony as to whether the valve was lifted and the box placed within or under the portion resting upon the ground, or whether it was placed under the portion which overhung the ground and was slightly above it. The plaintiff's witnesses testified that the latter was the case and that the box could be seen by a person walking along the highway. It was a tin box with a cover on, which was one and nine-sixteenths inches high and two and two-sixteenths inches and two and nine-sixteenths inches in lateral dimensions. The box was painted red and in white letters appeared words indicating that it contained blasting caps, the name of the maker and words of warning such as " dangerous," " handle carefully," " don't smoke near caps," " keep open lights away," " attach caps to fuse with a cap crimper not with knife or teeth," and other warnings. They were dynamite caps which were intended to be exploded by the use of a powder fuse. These caps were made of metal in the shape of a rifle cartridge perhaps an inch and a half long and to discharge them a powder fuse was crimped into the open end.

On Sunday afternoon, December 7, 1924, a boy by the name of Gordon, about eleven years of age, son of William Gordon, was walking along this road in front of the house of Henry Gordon, his uncle, and he saw this red box under the water valve. He went under the porch, picked it up and took it away with him after opening the cover and finding it half full of these caps. He walked down through the village a considerable distance to a railroad track where he met three other boys including the infant plaintiff. The plaintiff was almost thirteen years of age, Kenneth Smith was almost fourteen years of age and Wilburt Rivette was about ten years of age. He showed the box to these boys and said

he had some blank cartridges. They walked down the railroad track about a quarter of a mile to an old concrete pier, the scene of the accident. There the Gordon boy gave caps to each of the others and they tried to explode them. They had pieces of string which they put into the open end of the cap in the manner in which a powder fuse was inserted. Smith and Rivette each tried it but they used too long a piece of string and when they lit the string it went out. Then the plaintiff used a shorter piece of string and lit it, but before he could throw the cap it exploded injuring his left hand in which he held it. He realized when he put the string in and lit it that probably it would go off and that was why he did it. He testified that he did not mean to have it go off in his hand. He was going to throw it but did not have time, because the string was so short that the wind blew the flame right into the cap. He testified that he knew it was too dangerous a thing to have it go off in his hand. The Gordon boy's father was a contractor who was accustomed to exploding dynamite and that very summer had assisted the defendants in their blasting. One or more of these boys must have known how to explode these caps, either by reading what was on the box, or by having seen it done or by having heard about it. They were all old enough to be able to read and the Gordon boy had been in school since he was six years old. When he was nine years old he started loading and shooting a rifle on hunting trips with his father. He knew that the caps were dangerous. He did not try to explode one himself. He says he waited until the other boys tried theirs, and he told them to be careful. He says he knew what would happen if it went off. He did not attempt to have them explode the caps in the village, but went with them a long distance to an old pier along the water where they could be alone. The evidence does not show where or how they got their string and matches, but someone of them went prepared to explode these caps in the peculiar manner in which they were intended to be exploded.

Assuming that the defendants wrongfully placed this box of caps beneath the valve under Henry Gordon's porch in such a manner as to be visible from the road and without the permission of the owner of the property to so store them, which is the conceded fact, and that the defendants were guilty of maintaining a nuisance, the question is whether the maintenance of such nuisance was the proximate cause of the injury received by the plaintiff. The Babcock boy did not come within the direct range of such a nuisance. He was not attracted to the porch by seeing any such red box. He did not go near it. It was the Gordon boy alone who saw the box and wrongfully appropriated it. One of the other boys testified

41

that he had been under the porch and had seen the box, but he did not pay any attention to it and did not examine it. Occasionally these boys had played around Henry Gordon's house but Henry Gordon had no children and the boys were accustomed to play regularly around William Gordon's house. The first time the evidence connects the plaintiff or the other boys in any manner with the caps was when the Gordon boy brought the caps to them down by the railroad track. In order to hold the defendants responsible for the result of this accident it must be found that the accident was the natural and probable consequence of the act of the defendants' servants in leaving this box of caps exposed to view from the highway. " The law requires that the injury must so directly result from a wrongful act that, according to common experience and the usual course of events, it might under the particular circumstances have reasonably been expected." (*Hall* v. *New York Telephone Co.*, 214 N. Y. 49, 52.) If the defendants became wrongdoers, they were " answerable as such for the proximate consequences of the wrong. * * * In other words, for those consequences that ought to have been foreseen by a reasonably prudent man." (*Perry* v. *Rochester Lime Company*, 219 N. Y. 60, 63. See, also, *Beickert* v. *G. M. Laboratories, Inc.*, 242 N. Y. 168; *Horan* v. *Inhabitants of Watertown*, 217 Mass. 185.)

In the case of *Hall* v. *New York Telephone Co.* (*supra*) defendant's servants, who had been using denatured alcohol marked " poison " in repairing a telephone line along the highway, left a bottle of the fluid standing by the roadside. Two boys, the plaintiff nine and his brother seven years of age, took the bottle home and poured some of the alcohol on the grass. One of them set fire to it and the other was burned. It was held that the defendant was not liable since the accident was not a result which might under the circumstances have been reasonably expected.

In *Perry* v. *Rochester Lime Company* (*supra*) the defendant stored a chest of nitroglycerin caps upon public land in the city of Rochester without a permit and in violation of a city ordinance. The caps were packed in tin boxes which in turn were contained in unmarked wooden boxes. The chest having been left open two boys stole one of the wooden boxes and hid it in a barn near their home. The next day these boys together with another boy of eight years left the barn carrying the box and as they proceeded with it an explosion took place killing the three boys. It was held that the accident was not the proximate result of the open chest in the highway; that a series of new and unexpected causes intervened before these explosives brought about the death of the little boy who went along with the two boys who had the box.

In *Beickert* v. *G. M. Laboratories, Inc.* (*supra*) the plaintiff, an infant, was burned by the ignition of some pieces of film which he and another small boy had picked up in a lot in the rear of the defendant's plant, and which they carried away and lighted. It was held that such a result could not have been reasonably anticipated by the defendant.

In *Horan* v. *Inhabitants of Watertown* (*supra*) the employees of the defendant's sewer department left a tool chest in the highway unlocked and unwatched, which contained dynamite. Sticks of dynamite were taken out of the chest by some boys and were thrown by them on a bonfire which they built in an adjoining field. The plaintiff who was standing near the fire was badly burned from the explosion. The court held that the wrongful storage of the dynamite was not the proximate cause of the injury.

Upon the authority of these cases it seems to us that if there was a wrongful storage of these caps which could be considered an attractive nuisance, such was not the proximate cause of plaintiff's injury. It was not a case of handling an inherently dangerous article by boys at a place where it was wrongfully stored and where the mere handling of it would be likely to produce an accident. It was not the mere handling of it which occasioned the explosion, but it was the use of a fuse and a fire which accomplished the damage. This was an agency which it could not reasonably be apprehended that boys would use unless they were familiar with the precise method of using that type of cap and expected an explosion. The danger was in applying fire. Moreover, the Gordon boy was chargeable with knowledge that he had no right to take things which did not belong to him and he was guilty of an unwarranted trespass. That act of his was an intervening cause. Another intervening cause was the transportation of the caps by the Gordon boy to a remote spot for the purpose of having the other boys explode them, he knowing that they were dangerous and being unwilling to explode them himself and even warning his companions to be careful. We think that the result was not reasonably to have been foreseen, and that new causes intervened so that the accident was not the proximate result of any negligence or nuisance committed by the defendant.

The judgment should be reversed and the complaint dismissed, with costs.

CochRANE, P. J., Van Kirk, McCann and Davis, JJ., concur.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.