AMERICAN MUT. LIABILITY INS. CO. v. BUCKLEY & CO., Inc.

No. 7540.

Circuit Court of Appeals, Third Circuit.

Feb. 4, 1941.

Rehearing Denied Feb. 24, 1941.

846

Isaac A. Pennypacker, of Philadelphia, Pa. (John Sailer and Pepper, Bodine, Stokes & Schoch, all of Philadelphia, Pa., on the brief), for appellant.

Maurice Rose, of Philadelphia, Pa., for appellee.

Before BIGGS, JONES, and GOOD-RICH, Circuit Judges.

BIGGS, Circuit Judge.

This is a proceeding brought under the Declaratory Judgment Act, as amended, 48 Stat. 955, 28 U.S.C.A. § 400, by American Mutual Liability Insurance Company to determine its liability upon a policy of public liability insurance issued by it on August 1, 1935 to the appellee, Buckley and Company, Inc.

The Buckley Company, a contractor, was excavating for the foundation of a public school in Philadelphia. Michael Abate, thirteen years old, saw some caps used to detonate dynamite lying on a pile of lumber outside the fence at the site of excavation. One of his companions warned Abate, telling him to leave the cap alone. Abate put it in his pocket. The school which Abate attended was directly opposite the excavation and he must have heard frequent explosions caused by blasting. Two days later Abate took the cap out of his pocket and commenced to play with it though a companion warned him to put it down, stating that it might go off. Abate disregarded this warning and proceeded to attempt to set the cap alight with matches. Failing in this he threw the cap into a bonfire. The fire went out and the cap did not explode. Abate went forward toward the remains of the fire. The cap finally exploded and Abate sustained serious injuries. About half a minute elapsed between the moment when Abate threw the cap into the fire and the explosion. All these events took place within the period of time covered by the policy. Abate, by his parents, sued the Buckley Company. The appellant disclaimed any liability under the policy. The Buckley Company settled the suit by paying $2,750 to Abate and $500 as a counsel fee. The Buckley Company informed the insurance company that it was taking these steps and it is conceded by the appellant that the settlement was made in good faith and was as advantageous as could reasonably be obtained and that the payment for legal services was necessarily incurred and fair.

The insurance company issued its policy to the appellee whereby it agreed, in consideration of a premium based upon the entire remuneration earned by the insured's employees, "as respects bodily injuries * * * sustained by persons other than employees of the insured, through accidents occurring during the policy period * * * in the performance of the operations carried on by the insured at the locations and in the business as described in the declarations. * * *

"To settle or defend each claim and suit even though wholly groundless, brought against the insured to enforce the payment of damages for such injury. * * *

"To pay * * * judgments rendered against the insured for damages covered by the policy * * *".

An "Exclusions" clause of the policy also provided that it did not insure as to claims for injuries or death "caused by any person whose remuneration is not included as a part of the remuneration subject to premium computation * * *".

The court below gave judgment for the appellee for the full sum of settlement and counsel fee. The appeal at bar followed.

The appellant contends that the injury sustained by Abate was not within the coverage of the policy and alleged that the explosion was not an accident, that it did not occur in the performance of the operations carried on by the insured at the excavation and that it was not caused by an employee of the insured. The learned trial judge took the position that the explosion was an accident because the cap exploded

when Abate was not trying to explode it but to recover it, stating that there might have been a serious question about this if the cap had exploded in the bonfire where Abate had intended it to explode. The appellant's argument in substance is that though the caps had come to rest in a dangerous position due to the negligence of its insured's employees, the responsibility for further effects of this negligence was relieved by Abate's deliberate actions intended to explode the cap.

The answer to this argument is suggested by the decision of the Supreme Court of Pennsylvania in Fehrs v. McKeesport, 318 Pa. 279, 280, 178 A. 380, 381, where a similar contention was made by the City of McKeesport. In delivering the opinion of the court Mr. Justice Simpson adopted as the law of Pennsylvania the statement of liability for attractive nuisances contained in 22 R.C.L. 141, as follows: "With reference to dangerous articles negligently left where they are likely to be found by children, in the majority of the cases, the courts do not treat their acts as intervening causes, but hold that the result must have been, or at least ought to have been, foreseen, and consequently the defendant is held liable under the general rule that a negligent person is held responsible for all of the consequences of his negligence, which ought reasonably to have been foreseen. As it has been tersely put: 'One who deals with children must anticipate the ordinary behavior of children.' The rule has been applied to charge with liability one who puts in a position, where children are likely to be attracted·by them for the purposes of play, such articles as a swing-gate, a dynamite cap, a detonator, a signal torpedo, or a railroad turntable."[1] Mr. Justice Simpson in a scholarly opinion cites the leading Pennsylvania cases relating to the doctrine of attractive nuisances and reconciles them, and though the circumstances of Fehrs v. McKeesport, supra, differ somewhat from those of the case at bar,[2] none the less we are compelled to the conclusion that the principles stated therein govern the instant case upon this point. The fact that Abate was warned by his playmates concerning the dangerous nature of the detonating cap and that a thirteen year old boy endowed with a higher degree of common sense would have realized the dangerous nature of the instrumentality with which he was so lightly dealing, does not alter our conclusion. The Buckley Company was negligent in leaving the caps upon the pile of lumber and was responsible for "the injury in the order of events", even though its "negligent act was not the nearest cause in the order of time". Loughlin v.

---

[1] The terminology in this quotation differs somewhat from that used in the Restatement of Torts by the American Law Institute, but the analysis is not materially different. Under the Restatement's terminology (§ 441) "An intervening force is one which actively operates in producing harm to another after the actor's negligent act * * * has been committed." But in order that the actor escape responsibility for his prior negligence the intervening force must have been a "superseding cause", § 440. The intervening force is not superseding where it is a normal response to the stimulus of a situation created by the actor's negligent conduct. § 443. In this instance, as in many others dealing with an apparent disagreement on the extent of responsibility for negligent acts that disagreement disappears when the use of terms is analyzed.

[2] In the cited case a contractor left dynamite caps in a park where blasting operations had been conducted. The plaintiff, who was twelve years old, was walking with two girls who were fifteen years old. He had with him a toy airplane which had lost one of its cylinders. One of the girls picked up the dynamite cap thinking it was a lipstick tube and the boy used it to replace the cylinder on his toy. The plaintiff attempted to remove the contents of the cap in order to put it in the toy and the explosion occurred. The plaintiff intended to remove the contents of the cap. He did not intend to cause the explosion. In the case at bar Abate intended to cause the explosion, though not at the time that it occurred. The ruling in the Fehr's case in substance is that a child of tender years brought into contact with an attractive nuisance may be expected to perform dangerously with that nuisance precisely as it may be anticipated that wind, or some other natural force, will blow to the ground an object left in a dangerous position. For decisions to the contrary see the following: Babcock v. Fitzpatrick, 221 App.Div. 638, 225 N.Y.S. 30, affirmed in 248 N.Y. 608, 162 N.E. 543; Vining v. Bridges Sons Co., Inc., 127 Me. 544, 142 A. 773; Case, Adm'r v. Miami Chevrolet Co., 38 Ohio App. 41, 175 N.E. 224; Matijevich v. Dolese & Shepard Co., 261 Ill.App. 498.

848

Pennsylvania R. Co., 240 Pa. 174, 178, 87 A. 294, 295.

 The appellant further argues that the explosion did not occur "in the performance of the operations carried on by the insured at the location". This contention must be dealt with briefly. The detonating caps were used by the contractor in the performance of its operations at the location. The contractor's servants negligently left them at the scene of its operations. As the result of the contractor's negligence in carrying on its operations the detonating caps came to rest in a dangerous position and the resulting explosion reasonably could have been anticipated.

The appellant relying upon the "Exclusions" clause of the policy also contends that the explosion was not caused by an employee of the contractor. Obviously the negligent acts of servants of the contractor permitted the detonating caps to come to rest in a dangerous position and since there was no intervening independent agent between the negligent acts of the contractor's employee or employees and the explosion, that explosion was caused by the employees of the insured appellee and the resulting liability was within the terms of the policy. Cf. Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876.

The appellant took the position that it was entitled to prove the actual facts relating to the explosion which it alleges show no liability to the appellant under the terms of its policy. The trial court assumed that the statement of claim filed by Abate was not conclusive and permitted the appellant to prove the actual facts. It is very clear, however, both upon Abate's statement of claim and upon the actual record adduced at the trial that the liability incurred by the Buckley Company was of the precise kind against which it had insured itself with the appellant.

The suit brought by Abate was not without legal grounds, but even though it had been wholly groundless in respect to Abate's ability to maintain it upon the evidence, it was very clearly the sort of suit which the policy was designed to cover. It is obvious therefore that the appellant was obligated to settle or defend the suit brought on behalf of Abate against the Buckley Comany and it being conceded that the amount paid out by the Buckley Company in disposing of this litigation was fair and reasonable the appellant's liability follows. This liability included the reasonable attorney's fee paid by the Buckley Company to its counsel. Murphy & Co. v. Mfgrs. Casualty Co., 89 Pa.Super. 281, 288; American Surety Company of New York v. McSpadden, 86 Pa.Super. 316. See John B. Stevens & Co. v. Frankfort, etc., Ins. Co., 9 Cir., 207 F. 757, 47 L.R.A.,N.S., 1214; Brassil v. Maryland Casualty Co., 147 App.Div. 815, 133 N.Y.S. 187, affirmed 210 N.Y. 235, 104 N.E. 622, L.R.A.1915A, 629; Aetna Life Insurance Co. v. Bowling Green Gas Light Co., 150 Ky. 732, 150 S.W. 994, 43 L.R.A., N.S., 1128.

In conclusion we state that the appellant seeks an interpretation of its contract which is far too technical to be practical. A contractor's public liability policy must be construed in the light of the purpose for which it is intended. Bingell v. Royal Insurance Co., Ltd., 240 Pa. 412, 417, 87 A. 955; Central Market St. Co. v. Insurance Co., 245 Pa. 272, 276, 91 A. 662; Bone v. Detroit Nat. Fire Ins. Co., 261 Pa. 554, 558, 104 A. 742.

Accordingly the judgment of the court below is affirmed.