CHARLES E. HALLENBECK, as Guardian ad Litem of CHARLES E. R. HALLENBECK, an Infant, Respondent, *v.* LONE STAR CEMENT CORPORATION, Appellant.

Third Department, March 24, 1948.

328

*R. Monell Herzberg* for appellant.

*Wilson & Connor* for respondent.

RUSSELL, J. This is an appeal by the defendant from a judgment of the Supreme Court entered against it in favor of the

plaintiff Charles E. Hallenbeck as guardian ad litem of Charles E. R. Hallenbeck, an infant, entered in the office of the Columbia County Clerk on June 30, 1947, upon a verdict of a jury and from an order denying its motion to set aside the verdict and for a new trial.

This case was tried on the theory of negligence. The plaintiff, a fifteen-year-old boy, together with another boy of the age of thirteen years, left their homes in the city of Hudson at about one o'clock on Sunday afternoon, October 21, 1945, and proceeded by means of a public highway and then across lands of the defendant which were leased to one William Hiscox, to the land of the defendant in which was being operated a quarry for the purpose of its cement business. While walking down the Newman road and before entering the land of the defendant, one of the boys, Richard Inman, the companion of the plaintiff, testified that they made up their minds to steal blasting caps which were located in a building in defendant's quarry, for the purpose of Halloween. Arriving at the new quarry on defendant's property they walked around the rim of said quarry, then along the southerly rim to the floor of the old south quarry and finally climbed down onto the floor of the new quarry by means of a rope which was approximately thirty-eight feet long. This rope was for the purpose of assisting drillers to go up and down from one quarry to another as a short cut. When they reached the floor of the new quarry Inman pointed out the work shack. The two boys then proceeded to the building. This building was covered with tar paper. The plaintiff while trying to see through a crack in the door lifted up the edge of the tar paper and the key fell out. The plaintiff then unlocked the door with the key. The boys entered the building and found a big spool of green rope which was prima cord. Prima cord has the appearance of ordinary fuse, but has far greater dangerous potentialities. It is a highly explosive detonating fuse which explodes with tremendous force. It contains PETN, one of the highest explosives known to man. They also found blasting caps in red tin boxes with yellow lettering which contained warnings as to dangerous contents. The plaintiff then took two boxes of blasting caps, each box containing 100 caps, while Inman took one and one-half boxes of blasting caps. They also stole a pair of crimpers and between twenty-five to thirty feet of prima cord. The door of the work shack was then locked, the key replaced behind the tar paper and the boys then climbed up the rope and started for the old quarry.

At the old quarry they inserted three pieces of prima cord,

seven to eight inches long in blasting caps. They lighted the same, but it smoldered and went out. They then threw the prima cord into a hole and returned to the new quarry to get more fuse that would set off these caps. On returning to the new quarry where the work shack was, they found a cardboard box in the corner covered with an old jacket. Inside this box they found three or four rolls of white fuses with caps attached. The plaintiff stole three rolls of this fuse and Inman two rolls. The fuses with caps attached were three feet or more in length. They then closed the locked door, climbed up the rope and at the top of the new quarry lighted one of the fuses with a cap attached. They exploded at least two more of these caps before reaching a cement platform at the southern end of an artificial pond in the Hudson city cemetery, which was off the defendant's property and approximately a mile from the shanty in which the explosives were stored. At this platform they stopped for the purpose of lighting caps and throwing them into the water. Inman started for a store to get some matches. While Inman was on his way, the plaintiff shortened the fuse from forty-two inches to eight or nine inches so it would explode sooner. He then slit the end of the fuse with the crimpers, one-half inch or less so some of the powder fell out. At this time he had two full boxes of blasting caps in his pocket. He then knelt on his right knee, and laid the fuse across his left leg. He then lighted a match, picked the fuse up and held it about one to one and one-half or two inches from the opened end of the fuse. As he held the lighted match to the end of the fuse the explosion occurred. He went to the edge of the bank and lay down and was then taken to the Hudson city hospital in an ambulance. At the time the explosion occurred the plaintiff claimed he had in the left pocket of his overalls a cap with a piece of prima cord attached. Prima cord explodes by force of concussion and not by lighting.

Considering whether or not the defendant was negligent in view of the high degree of care exacted of one who keeps in his possession explosive substance of a dangerous nature, the evidence reveals enlightening facts. The caps, fuses and prima cord which were taken by the boys were enclosed in a wooden shack with the door locked and the key hanging near the door under tar paper which covered the shack. The construction of the building and the manner of the storage of explosives violated several provisions of the New York State Labor Law, and also sections of the Federal statute known as the Federal Explosives Act. (U. S. Code, tit. 50, ch. 8, as amd.)

It appears that the main supply of dynamite, fuses and caps was kept in individual and widely separate magazines in the woods and that less than a month before the injury occurred the work shanty had been inspected by a State inspector who made no comment as to the defendant's use of the same. This shanty in question was used by the company to house the caps and fuses left over from the day's operation.

The plaintiff produced several children, ranging from thirteen to sixteen years of age, as witnesses who testified that there were no fences around the property and that they had been on the property of the defendant many times without permission for the purpose of hunting, fishing, playing games, Boy Scout meetings, entering the caves and trapping. Inman testified that in August before the accident he was with some boys who entered the shack and stole some caps and fuses. However, all the lands owned by the defendant were leased to William Hiscox, with exception of the lands used for quarries, railroads, buildings, or other equipment. Therefore, the defendant possessed control only over the lands within the exception. Some of these witnesses talked to the workmen while at work and were never told to get off the property.

In contradiction to this evidence the superintendent of the plant testified that he had never had any report of thefts of caps prior to October 21, 1945, and also that orders were issued to him to remove any trespassers or other people from the property; that there was only one entrance to the quarry and that even people who had business on the place were required to get passes at the office to enter.

One of the drillers testified that he had never heard of any caps being stolen from the shanty prior to October 21, 1945. The foreman of the plant testified some boys did come up to the quarry in vacation time and he ordered them away. He also explained to them the danger of stone rolling down and also the danger of blasting caps. The defendant's evidence further shows there was no guard or employee of the company at the quarry on Sunday.

Because of the nature of the building in which the explosives were stored in violation of the laws, and because of the disputed facts as to the presence of boys in and around the quarry before the day of the accident, a question of fact properly arose as to the negligence of the company.

The defendant, having in possession dangerous explosives, was bound to exercise such reasonable care as was commensurate with the apparent danger, especially where the presence of

children of tender years was involved. (*Travell* v. *Bannerman,* 174 N. Y. 47; 35 C. J. S,. Explosives, § 5, pp. 227–228.)

We now must pass to the doctrines of foreseeable consequences and proximate cause.

It appears that the plaintiff was in second year high school, had studied social studies, English 9, Spanish 1, elementary algebra and general science, and had passed all of those studies. He was also a member of the Boy Scouts and admitted that he knew it was wrong to go on other people's property, break into a building and take things. Equipped with this knowledge he first tried to light the prima cord about which he had no knowledge. When it smoldered and went out he threw it away and then went back as stated above, obtained caps and fuses that he did know would explode. He also knew he could be hurt by an explosion and he knew that by shortening a fuse he could create a quicker explosion. He exploded three of those on the way to the place of injury. At this time there is no evidence that he shortened the length of the fuse, and he consequently was not injured. The foreman testified that it takes two minutes and forty-eight seconds for a fuse forty-two inches to explode and that the company uses another fuse, a safety fuse, as a warning to workmen, that requires two minutes to explode, which gives the workmen forty-eight seconds to get away. Standing at the edge of the pond the plaintiff shortened the fuse to eight inches, crimped the fuse with a pair of crimpers so that some powder ran out and lighted the end, which caused a sudden explosion and therefore a new cause in the chain of events was created by the plaintiff himself. It cannot reasonably be said that the defendant could have reasonably foreseen or expected these different steps taken by the plaintiff which resulted in the sudden explosion. (*Perry* v. *Rochester Lime Co.,* 219 N. Y. 60–63.) '' The proximate cause of an event must be held to be that which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred.'' (*Rider* v. *Syracuse R. T. Ry. Co.,* 171 N. Y. 139, 147.)

Supporting this doctrine of an intervening cause or causes relative to the issue involved here, we rely upon *Perry* v. *Rochester Lime Co.* (*supra*). The defendant in that case stored blasting caps in a chest in a public place on the bank of the Erie Canal in the city of Rochester. This storage was in violation of an ordinance of the city of Rochester. At this place boys were accustomed to play and fish on this land. Two boys, one thirteen years old, and the other twelve years of

age, stole nitroglycerin caps which were packed in tin boxes and said tin boxes were packed in a wooden box. The wooden boxes were kept in a chest which was left opened. The boys hid the caps in the back yard of a friend and the next day the two boys who had stolen the caps, took the caps away to explode and were accompanied by a small boy, eight years old, who had not stolen any. The boy eight years old was killed by the explosion. No recovery was allowed. The court held (p. 64) " a series of new and unexpected causes intervened and had to intervene before these explosives could bring death to Perry " (the eight-year-old boy).

In the case of *Babcock* v. *Fitzpatrick* (221 App. Div. 638, affd. 248 N. Y. 608) the defendant had been doing road construction work at Whitehall in Washington County. It left a box of blasting caps under the porch of a house on the property of one Gordon. William Gordon, eleven years old and a nephew of the owner of the land where the caps had been improperly stored, stole some of these caps. He met another boy twelve years old. The two boys then went to a secluded place where in lighting a cap the plaintiff received injuries. The court held that the act of the Gordon boy was an intervening cause and no recovery was allowed.

The courts in Massachusetts have evidently held in such cases that the act of the one stealing or taking and then igniting an explosive is an intervening cause. In the case of *Horan* v. *Inhabitants of Watertown* (217 Mass. 185, 186) the sewer department of the defendant left a tool chest in a highway, unlocked and unwatched. The chest contained dynamite. There was no watchman guarding the dynamite or chest. Some boys took the dynamite and threw it on a bonfire. The plaintiff, who was a boy seven years old, was standing near the fire and was badly burned from the explosion. The court held that " the chain of causation is broken and the original negligence cannot be said to have been the proximate cause of the final injury."

The case of *Bottorff* v. *South Construction Co.* (184 Ind. 221) upholds the same principle of an intervening cause.

The plaintiff relies upon the doctrine enunciated in *Bridges* v. *Dahl* (108 F. 2d 228) (a Michigan case) and also *Luhman* v. *Hoover* (100 F. 2d 127) to the effect that one who stores explosives in a place where they are likely to fall into the hands of children, thus setting in motion a chain of events from which an ordinarily prudent person might reasonably anticipate injury, is primarily liable and the causation is not broken by the one

taking the explosive from the premises and later exploding the same to his injury. In these cases the plaintiff has overlooked the law as stated by the courts that the plaintiffs could not recover if they knew of the moral wrong involved in the act and if they appreciated the risk and danger involved in the act. In other words, the cases relied upon by the plaintiff hold that a child could recover only where he did not appreciate either the wrongful act or the risk and danger involved.

The instant case is stronger for the defendant than either the *Perry* v. *Rochester Lime Company* case (*supra*), or the *Horan* v. *Inhabitants of Watertown* case (*supra*). In the instant case the explosives were locked up and on private property. In the other cases the explosive was on public property in chests unlocked, which were accessible to children and adults. The instant case also differs greatly from the cases relied upon by the plaintiff because in the instant case the plaintiff testified himself that he knew of the wrongful act and of the risk and danger involved in exploding the caps and fuses.

The judgment and order appealed from should be reversed on the law and the facts and the complaint dismissed.

HEFFERNAN, J. (dissenting). Appellant, a corporation organized and existing under the laws of the State of Maine, and authorized to transact business in this State, with its principal office in New York City, is the owner of a tract of land comprising several hundred acres in the town of Greenport, Columbia County, New York, where it is engaged in manufacturing cement. The lands in question lie just outside of the city of Hudson and are bounded on the north by State highway No. 23, on the west by Newman Road and on the east by Spook Rock Road.

On these premises are located appellant's plants and quarries. The plant buildings are located close to the State highway. To the south of these buildings are the quarries, caves, woods, paths, roadways, railroad tracks and two shanties, one known as the work shanty located near the rim of what is referred to as the new quarry and the other known as the make-up shack or shanty located on the floor of this quarry.

In addition to these structures there are also located on the property a pond, picnic grounds, a Boy Scout cabin which appellant had permitted to be erected, and a swimming hole.

For many years, to appellant's knowledge and with its acquiescence, it had been the custom and practice for boys from the town of Greenport and the city of Hudson to roam at will on

these lands and to indulge in various forms of amusement and recreation without let or hindrance on the part of appellant.

In one of the quarries on its property over a long period of time appellant had stored, in a dilapidated wooden shack, dangerous explosives, among others, highly explosive detonating fuse known as prima cord, detonators, or blasting caps, and ordinary fuse. The blasting caps were fused and were available for immediate use and ready to be ignited. The prima cord which was intermingled with the blasting caps and ordinary fuse is a highly explosive detonating fuse capable of detonating at a speed of more than four miles per second and exploding with tremendous force. It contains PETN: one of the highest explosives known to science.

The proof clearly and definitely establishes that these dangerous instrumentalities were housed by appellant in the shack to which we have referred, the door of which had a cheap padlock, locked and unlocked by a key usually kept in a conspicuous place on the building itself.

It cannot be doubted that appellant, for years before the injuries sustained by respondent, had encouraged the youth of the neighborhood to make a playground of its premises. It permitted the erection of a cabin thereon for the use of Boy Scouts in which meetings were held and in which scouting activities were conducted, in some of which respondent was a participant.

But that is not all. Appellant also knew, or so the jury might have found, that the boys frequenting its property had been accustomed to help themselves to large quantities of blasting caps and ordinary fuse and to explode them on its property and in its immediate environs. Not only that but appellant encouraged this practice by repeatedly replenishing the supply of these dangerous articles. It continued to leave the key to the building exposed which was equivalent to an implied invitation to children of tender years to enter thereon and experiment with death-dealing agencies.

On Sunday, October 21, 1945, appellant had stored in this shack, not only blasting caps and ordinary fuse, but also a considerable quantity of prima cord which resembled other fuse, the deadly character of which was unknown to respondent or to the other children who were accustomed to use the premises.

In the afternoon of that day respondent, just fifteen years of age, accompanied by a Boy Scout companion who was a few years younger and who had obtained blasting caps from this shack on previous occasions, visited appellant's premises. After

reaching the quarry the subject of caps was mentioned and respondent's companion said he knew where other boys obtained them and indicated the structure in which they were stored. Both boys decided to acquire some for use on Halloween. With that purpose in mind they entered the building using the key which hung on the door. They took possession of some blasting caps which they supposed to be fuse but which in fact were prima cord. They attempted unsuccessfully to explode the caps. They re-entered the building and removed therefrom some caps already fused and on the return trip they ignited some of them. Respondent had in one of his pockets a piece of prima cord with a cap attached. While he was engaged in lighting one of the caps it exploded and as a result the prima cord and cap carried in his pocket also exploded with tragic consequences. By reason of the explosion this young lad was seriously and permanently injured and has been rendered totally blind in both eyes. This action was instituted on his behalf for the recovery of damages on the theory that appellant was grossly negligent in storing the highly dangerous explosives in the manner in which it did. From a judgment in respondent's favor and from an order denying its motion for a new trial appellant has come to this court.

In storing the explosives in the manner in which it did appellant violated with impunity sections 451, 454, 455 and 457 of article 16 of the Labor Law of the State and section 133 of the Federal Explosives Act (U. S. Code, tit. 50, ch. 8, as amd.) and also the regulations, which have the force of law, adopted pursuant to the provisions of section 18 (U. S. Code, tit. 50, § 140) of that act.

It stored the fuse, detonators and prima cord in a building which did not comply with the provisions of the Labor Law as to its construction, its method of locking or as to the signs required to be posted. It violated the provision against keeping detonating caps in a separate magazine and likewise the provision prohibiting the mingling of blasting caps or detonators with other explosives such as prima cord or ordinary fuse.

Among many others appellant failed to comply with the Federal regulations which required it to display proper signs upon its premises, to keep magazines securely locked, in storing prima cord with detonators and in storing explosives in an improperly constructed building without proper doors and locks and not theft-resistant.

Appellant's violation of the statutes and regulations referred to is sufficient in and of itself to justify the conclusion that it

was negligent (*Martin* v. *Herzog*, 228 N. Y. 164). Disregard of statutory safeguards is a breach of duty toward those for whose protection the safeguards have been prescribed (*Boronkay* v. *Robinson & Carpenter*, 247 N. Y. 365).

The courts of this State apply the rule that one who keeps explosives upon his land must exercise a high degree of care — a care commensurate with the deadly character of the explosives and the surrounding circumstances, such as their accessibility to others, particularly children, even though those children might be trespassers or bare licensees (*Travell* v. *Bannerman*, 174 N. Y. 47). In *Beickert* v. *G. M. Laboratories* (242 N. Y. 168) the court pointed out that inherently dangerous articles are to be distinguished from the rule applied in that case.

The same rule is recognized in the standard digests dealing with this subject.

In Corpus Juris Secundum (Vol. 35, Explosives, § 5, pp. 227–229) it is said: " One keeping or storing dangerous explosives must exercise reasonable care, which is such care as is commensurate with the apparent danger. Accordingly, it is said the utmost caution and highest degree of care must be used in the care and custody of dangerous explosives, such as powder and dynamite, and a high degree of care is required in the possession and storage of explosives generally, especially where young children are involved * * *."

As to one storing or keeping explosives in a place to which children may have access the rule is that he will " be held to a corresponding degree of care to protect them from injury, and a failure to exercise such care will impose liability, * * * nor need liability rest on the doctrine of attractive nuisance " (p. 230). The extent of care to be taken is affected by the child's knowledge and understanding of the dangers and " Liability cannot be avoided by the fact that warning has been given to young children " (p. 231). The usual rule as to trespassers or bare licensees does not apply and where infants and explosives are involved " one storing explosives owes to a trespasser a duty of higher degree than merely not wilfully to harm him " (p. 229). (35 C. J. S., Explosives, § 5.)

In American Jurisprudence (Vol. 22, Explosions and Explosives, §§ 14, 18, 19) the general rule is expressed as follows:

" In regard to any instrumentality, care must be taken in proportion to the danger involved. Hence, commensurate care by persons having the possession and care of dangerous explosives is greater than the care which would be required if such substances were innocuous. In the case of explosives the

highest degree of care must be exercised, and the utmost caution used to the end that they will not cause injury or damage." (§ 14, pp. 135–136.)

" The dangerous nature of explosives and the horrible effects of their misuse by children who have no understanding of the danger incident to handling explosives have prompted the courts to throw a safeguard around children of tender years to protect them in the exercise of their childish instincts. With the growth of precedent there has arisen some confusion contributed to by the traditional rights of landowners, the oftentimes fatal attractiveness which explosives have for children incapable of understanding their hidden power, and the circumstances that such explosives are accessible in places where the owner knows or should know that children are likely to play or venture." (§ 18.)

One who keeps explosives owes a duty, especially to children who cannot be expected to know and appreciate the danger, to exercise care commensurate with the danger to prevent injury to children who may have access to or come in contact with the explosives. It may be stated as a general rule that the fact that a child is a trespasser does not relieve one keeping or using explosives from his duty to exercise care for the child's protection and his liability for negligence in this regard. The weight of judicial opinion supports the view that if the landowner is negligent in leaving or storing an explosive in such a place that it is accessible to children whose presence should have been anticipated, the wrongdoing of the child will not relieve him from liability. The traditional rule as to trespassers has a well-recognized exception when explosives and children are involved. To leave an explosive exposed and unguarded on accessible premises where it is found by trespassing children constitutes negligence. This rule is based on the very natural and reasonable assumption that children, wherever they go, must be expected to act upon childish instincts and impulses and those who are chargeable with the duty of care and caution toward them must calculate upon this and take precautions accordingly. Also distinction has been made between explosives and substances, such as gasoline, which are capable of being made to explode (22 Am. Jur., Explosions and Explosives, § 19).

Courts of repute in other jurisdictions have recognized and enforced identical rules (*Bridges* v. *Dahl*, 108 F. 2d 228; *Smith* v. *Smith-Peterson Co.*, 56 Nev. 79; *Wood* v. *McCabe & Co.*, 151 N. C. 457; *Mattson* v. *Minnesota & North Wisconsin R. R. Co.*, 95 Minn. 477; *Lone Star Gas Co.* v. *Parsons*, 159 Okla. 52; *Mis-*

*souri Pacific R. R. Co.* v. *Slatton,* 193 Ark. 356; *Vaughan* v. *Industrial Silica Corp.,* 140 Ohio St. 17; *Luhman* v. *Hoover,* 100 F. 2d 127; *Penso* v. *McCormick,* 125 Ind. 116).

In *Bridges* v. *Dahl* (*supra*) the facts are quite similar to those in the case before us. There it appeared that a highway contractor, during a winter shutdown stored explosives in a camp garage building which he claimed to have been securely closed and plaintiff's proof showed he allowed to often remain open. It was customary for children living nearby to play about it and the other buildings on the premises. The garage was unfenced and without warning signs, all of which the defendant knew. Plaintiff, a boy, fifteen years and four months of age, after delivering milk at the camp, entered the garage and took a box of dynamite caps and a piece of fuse. At different times thereafter off the premises plaintiff exploded some of the caps by attaching a fuse and lighting and throwing it. Several days later he attempted to explode several of the caps simultaneously and received severe injuries, including total permanent blindness. He had had no experience in the handling of such caps and did not appreciate the dangers incident to their use although he knew that dynamite was dangerous. The jury rendered a verdict in favor of plaintiff and defendant appealed. The court said:

" Care is required of persons having possession and control of dangerous explosives, such as firearms, dynamite or caps and the utmost caution must be exercised to the end that harm may not come to others coming in contact with them and the degree of care is more exacting as respects young children. The extent of care which a reasonably prudent person should take with dangerous explosives to avoid injury in the case of a child is affected by the child's knowledge and understanding of the dangers incident to their use.

" It is well-settled that one who keeps or uses explosives owes a duty to young children who cannot be expected to know or appreciate their danger, to exercise care commensurate with the danger to avoid injury to those who are likely to have access to or contact with the explosives. Michael Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154; Restatement of Torts, Section 339. There is substantial evidence that appellant was negligent in leaving these caps where they were easily found by appellee and his playmates. * * *

" Under the laws of Michigan, the rule prevails that where there is no legal duty, there can be no actionable negligence which has been applied to both infants and adults who were

trespassers and to whom no duty was owed to keep the premises on which the injuries occurred in a reasonably safe condition [citing cases].

" There is an exception to this rule that the owner or occupant of land is bound to exercise ordinary care commensurate with the danger to avoid injury to children where he maintains on his property dangerous explosives in places where they are accustomed to resort for play or other purposes and where their presence could be anticipated by the exercise of ordinary care. Butrick v. Snyder, 236 Mich. 300, 210 N. W. 311. As said in the case of LeDuc v. Detroit Edison Company, supra, [254 Mich. 86, 235 N. W. 834] the point of distinction is this, ' where the child is where he has a right to be, as in the street or as a licensee on private premises, and his trespass is technical rather than willful, i.e., consists of playing with or taking the property of another as the spontaneous and natural act of an irresponsible child immediately attracted to the object, recovery is not barred by the trespass.'

" The garage in which the dynamite caps in question were stored was in a cluster of contiguous camp buildings with no fencing between and two families with children lived in them. Appellee and other children played in and about the garage and other buildings in which the road machinery was stored and appellee made daily trips to the premises to deliver milk and there is substantial evidence that the garage doors stood wide open, the dynamite caps being on a shelf easily within the reach of the taller children. Appellant knew, or by the exercise of ordinary care, could have known that children played around these buildings and in the garage and that the dynamite caps were accessible to them.

" As to whether an infant exercises due care to avoid danger is not to be measured by the rigid rule applicable to adults, but the standard to be applied to the conduct of a child is whether it exercised such care as is ordinarily exercised by children of the same age, capacity, discretion, knowledge and experience under the same or similar circumstances. The age of a child is not the true test for determining the degree of care required of him, but his intelligence. [citing cases.] * * *

" Appellant's primary negligence, which we have said was a question for the jury, consisted of leaving the dynamite caps in a place where they were likely to fall into the hands of children, thus setting in motion a chain of events from which an ordinarily prudent person might reasonably anticipate injury. To say as a matter of law that this causation was broken by

appellee taking the dynamite caps from the premises and later exploding them to his great injury, by his failure to realize their danger is to take a distorted view of the relative importance of this incident and would entirely ignore the duty resting on appellant to exercise reasonable care commensurate with the danger, to avoid leaving dynamite caps exposed to the inquisitiveness of infants, who lack sufficient discretion to appreciate the danger of exploding them. Luhman v. Hoover, 6 Cir., 100 F. 2d 127.

" The issue of proximate cause was, we think, fairly submitted to the jury. The judgment is affirmed."

In submitting this case to the jury the Trial Judge, *inter alia*, said:

" The storage of explosives, which are obviously dangerous, requires that degree of care suggested by the danger involved. The defendant in keeping explosives is required to exercise that degree of care which reasonable and prudent management would exercise to see that injuries to persons did not result from the keeping of explosives. If the defendant knew or would in the exercise of reasonable care have learned that boys in the neighborhood were taking explosives from its storage shed and did not use reasonable care to safeguard the explosives it may be deemed negligent, if the jury finds that the keeping of explosives was not in the manner in which a reasonably careful and prudent management would have kept them, and there may be a recovery if the jury also finds the plaintiff himself exercised the reasonable care a boy of fifteen years of age would be expected to exercise for his own protection. * * *

" The owner of land generally is not liable to a trespasser except for wilful injury, but the owner of land may be responsible to children for injuries caused by explosives on the land if a jury find that a reasonably careful and prudent owner would know children were using the land and the explosives were accessible to children or were being used by them."

Appellant took no exception to this portion of the charge and hence it is the law of this case.

Appellant is seeking to shield itself from responsibility on the plea that respondent was a trespasser and that even if negligent, such negligence was not the proximate cause of respondent's injuries.

Assuming that respondent was a trespasser that fact does not place him beyond the pale of the law's protection. However, under the court's charge that question has been eliminated from the case. Irrespective of whether or not respondent was a

trespasser appellant owed him a duty which it failed to discharge. It improperly stored on its lands which it knew children were using dangerous explosives which were accessible to them. In such circumstances it should be held to the strictest accountability.

It is idle to argue that appellant's negligence was not the proximate cause of respondent's injuries. The Trial Judge told the jury that respondent had the burden of establishing that his injuries were sustained because of appellant's negligence. At appellant's request he defined proximate cause as " that cause which in natural sequence unbroken by any new cause produces that injury and without which the injury would not have occurred ".

" In order to establish liability, the negligence alleged in keeping the explosive must be the proximate cause of the injury; but, since disastrous results from negligence in the care of high explosives may reasonably be anticipated, courts will not look too narrowly for independent causes intervening between the injury and the original negligence in keeping." (35 C. J. S., Explosives, § 5, p. 229.) The proximate cause must be one which in view of all the surrounding circumstances might readily have been foreseen by an ordinarily prudent man as likely to result in the injury. Where the accident could have been reasonably anticipated by a reasonably prudent man or he ought to have foreseen that an accident was probable, the actor may be held liable. The result need not be inevitable but it must be one that might naturally and properly follow the negligent act. The actor need not have foreseen the exact occurrence or the precise injury resulting from his act. It is only necessary that he be able to foresee that some injury to some person might result from his act (1 Warren's Negligence, pp. 38, 39, 41).

On the facts in this record it is clear that appellant should have reasonably foreseen the consequences of its negligence and violations of law.

The questions of proximate cause and respondent's contributory negligence were questions for the jury and not for the court and the charge of the Trial Judge in that respect is in accord with sound legal principles.

As was said by Chief Judge CRANE, speaking for the Court of Appeals in *Haverstick* v. *Hansen & Sons, Inc.* (277 N. Y. 158, 162): " This is a case where the direct act of negligence caused an injury which any reasonably prudent man should have foreseen, at least the evidence created a question of fact for the jury."

The cases cited and relied on by appellant are all distinguishable.

*Carbonne* v. *Mackchil Realty Corp.* (296 N. Y. 154) involved a foundation wall which was defective and not a dangerous instrumentality.

*Mendelowitz* v. *Neisner* (258 N. Y. 181) is another case of a wall with a loose stone.

*Perry* v. *Rochester Lime Co.* (219 N. Y. 60) is a case where a recovery was denied because of intervening causes and where a third person was injured. In that case the court pointed out that its decision was not contrary to the holding in *Travell* v. *Bannerman* (*supra*).

*Babcock* v. *Fitzpatrick* (221 App. Div. 638, affd. 248 N. Y. 608) is another case of injury to a third person rather than to the one originally exposed to the danger.

*Holmes* v. *Delaware & Hudson Co.* (128 App. Div. 24) is a case where the finder passed the instrument found to another and the court held that there was an intervening cause cutting off causation and liability.

In *Hall* v. *New York Telephone Co.* (214 N. Y. 49) a boy was injured when another boy lighted denatured alcohol which they had found. Liability was denied because the substance found is not a dangerous instrumentality.

*Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301) is the famous " turntable case " in which liability was denied since the instrumentality was not a dangerous one.

*Morse* v. *Buffalo Tank Corp.* (280 N. Y. 110) is another case in which the injured plaintiff was a third party and not one of the finders of some gasoline who threw it upon a fire into which plaintiff fell. As in other cases where a third party rather than the original finder was injured the court denied recovery on the ground of intervening causes and also on the ground that gasoline is not a dangerous instrumentality. It is worthy of note that the court again cited with approval *Travell* v. *Bannerman* (*supra*), and distinguished it. from the cause under consideration.

To summarize it may be said that the cases upon which appellant relies have no application to the instant case either because they involved an injury to a third person rather than to the one originally exposed to the risk or the instrumentality involved was not in itself dangerous. Emphasis should be placed on the fact that in the cases on the subject of high explosives the rule announced in *Travell* v. *Bannerman* (*supra*) has never been relaxed.

The judgment and order appealed from should be affirmed, with costs to respondent.

HILL, P. J., FOSTER and DEYO, JJ., concur with RUSSELL, J.; HEFFERNAN, J., dissents, in an opinion.

Judgment and order appealed from reversed, on the law and facts, and the complaint dismissed on the law, without costs.